Martin J.—[After stating the facts.]
The defendant contends that the action cannot be maintained ; that no right of action exists, either at common law or by statute, in favor of a wife against a third person for enticing her husband away from her, or depriving her of the comfort of his society. ■ This presents the most important question which arises on this motion.
That a husband can maintain an action for the wrongful and malicious enticing away of his wife, is abundantly established by authority. This was conceded on the argument. But the defendant insists that such an action was based upon the husband’s loss of the services of his wife; and, as the wife was not entitled to the services of her husband, the action by her could not be maintained. I do not think this position of the defendant can be sustained. It seems to be well settled that a husband can maintain such an action, although the act complained of has caused Mm no actual loss of the wife’s services (Heermance v. James, 47 Barb. 120, and cases cited in opinion ; Bigaouette v. Paulet, 134 Mass. 123 ; Michael v. Dunkle, 84 Ind. 544).
Thus it is seen that the action by the husband is not based wholly upon the loss of services, nor is such loss absolutely essential to the maintenance of the action. But such an action may be maintained where the only loss sustained by the husband is the loss of *295 the society and companionship of his wife. That the wife cannot maintain an action of this nature, based upon the loss of the services of her husband must be admitted, because she is not entitled to such services. But the question here presented is, can she maintain such an action for the loss of the companionship and society of her husband ?
Bigelow, in his work on Torts, says: ‘To entice away or corrupt the mind and affections of one’s consort is a civil wrong, for which the offender is liable to the injured husband or wife. The gist of the action is not the loss of assistance, but the loss of the consortium of the wife or husband, under which term are usually included the person’s affection, society or aid” (Bigelow on Torts, 153).
Cooley, in a note in which he refers to the case of Lynch ». Knight, post, says: We see no reason why such an action cannot be supported where by statute the wife is allowed for her own benefit to sue for personal wrongs suffered by her” (Cooley on Torts, 227).
In the case of Breiman v. Paasch, 7 Abb. W. C. 249 (which was similar to the case at bar), it was held by the city court of Brooklyn, that an action could be maintained by a married woman for damages against any one for enticing her husband from her, and also that she could sue and be sued without the consent of her husband, and without his being a party to the record. Chief Justice Neilsobt, in delivering the opinion in that case, after citing cases in support of the doctrine that such an action could be maintained, says : But without such aid I should have little hesitation in holding that the plaintiff is entitled to the relief sought. This is a special action on the case for a wrong, and for every wrong willfully or even negligently inflicted, and causing loss and damage, there is a remedy. This is so with us even if the party injured be a married woman. Many of the disabilities imposed *296 on her by common law have been shaken off, and she may now sue and be sued without the consent of her husband, and without his being a party to the record.” The question in that case arose both upon a motion to vacate an order of arrest and upon a demurrer to the complaint. The decision of the special term overruling the demurrer, was affirmed by the general term on the opinion from which the above is quoted.
In the case of Clark v. Harlan (1 Cinc. 418), the superior court of Cincinnati held, that an action would lie in favor of a married woman against a third person for enticing away and harboring her husband. Judge Stoker, who delivered the opinion of the court in that case, says: “If the husband’s right to claim damages for the loss of" his wife’s society,—Ms solatium, as the civilians term it,—arises by virtue of the contract of marriage, the same result for stronger reasons should follow the loss of the husband’s consortium by the wife. His care of her whole social life, his protection from injury of her person, of her property, and of her good name, are alike demanded by the marital tie and the first principles of justice. He cannot lightly disregard the obligations he has solemnly assumed, or ignore the relation he bears to her to whom he has pledged his affections until the bond is severed by death or the judgment of the law. Although he prove false to his duty, there is no remedy against him like that she now seeks, for compensation in money, except for alimony. But we believe she is enabled under the law as it now exists in Ohio to ask the same relief for the same causes that would give the husband a remedy against him who should seduce his wife or persuade her to leave her husband, and afterwards harbor and detain her without good cause. The loss of the parties in each case is essentially the same.”
In Westlake v. Westlake (34 Ohio St. 621), the *297 supreme court of Ohio held that a wife might maintain an action for the loss of the society and companionship of her husband against any one who wrongfully induces and procures her husband to abandon or send her away. In that case the court says : “Is the right of the wife to the consortium of the husband one of her personal rights? If it is, then the statute makes the right of action growing out of an injury to the right the separate property of the wife, for which the Code gives her a right of action to sue in her own name. Before marriage, the man and woman are endowed with the sanie personal rights. If under no disability, each is competent to contract. When the agreement to marry is entered into, but before its consummation, each has the same interest in it, and either may sue for a breach of it by the other. In this State, neither the husband nor wife unconditionally surrenders their personal rights by consummating the contract of marriage; on the contrary, each acquires a personal, as well as legal, right to the conjugal society of the other, for the loss of which either may sue separately.”
The statutes of Ohio, so far as they are applicable to the question under consideration, are as follows: “Any personal property, including rights in action belonging to any woman at her marriage, or which may have come to her during coverture by gift, bequest, or inheritance .... or have grown out of any violation of her personal rights, shall .... be and remain her separate property and under her sole control ” (Laws 1861, p. 54).
Section 28 of the Civil Code of that State provides, that “where a married woman isa party, her husband must be joined with her, except when the action concerns her separate property .... she may sue or be sued alone . . . but in no case shall she be required to prosecute or defend by her next friend.”
*298 By our statute it is provided, that “ Any married woman may while married sue and be sued in all matters having relation to her sole and separate property, or which may hereafter come to her by descent, devise, bequest, purchase, or the gift or grant of any person, in the same manner as if she were sole ; and any married woman may bring and maintain an action in her own name, for damages, against any person or body corporate, for any injury to her person or character, the same as if she were sole ; and the money received upon the settlement of any such action, or recovered upon a judgment, shall be her sole and separate property ” (Laws 1862, c. 172, § 7).
By chapter 90 of laws of 1860, a married woman is given the right to hold property free from the interference of her husband, and to carry on a separate business.
By a comparison of these statutes it will be seen that the statutes of this State confer upon married women at least as great, if not greater, rights than those conferred by the statutes of Ohio. Under our statute, a married women may maintain an action in her own name for damages against any person or corporation for an injury to her person or character the same as if she were unmarried, and the avails of such action shall be her sole and separate property ; while the Ohio statutes provide that any right of action which may have come to a married woman during coverture, or grown out of any violation of any of her personal rights, shall be and remain her separate property, and that when an action concerns her separate property she may sue alone.
The provision of the Ohio statute that “ any right of action which may have grown out of any violation of her personal rights” shall be and remain her separate property, does not, I think, vest in her any cause of action not included in the provisions of our *299 own statute, by which she is given the right to maintain ‘ an action in her own name for damages for any injury to her person or character.” The term an injury to person ” has been the subject of repeated judicial construction in this State. In Delamater v. Russel (4 How. Pr. 234), it was held, that an action for criminal conversation was an action for an injury to the person-The same held in Straus v. Schwarzwaelden (4 Bosw. 627). In Taylor v. North (3 Code R. 9) it was held, that seduction was an injury to the person. The case of Steinberg v. Lasker (50 How. Pr. 432) is to the same effect. See also M’Intosh v. M’Intosh, 12 How. Pr. 289; Breiman v. Paasch, 7 Abb. N. C. 249. The cases cited are, I think, authority for holding that the term injury to her person in this statute includes an action by a married woman for enticing away her husband. I also think that upon principle the statute should be so construed as to include this action.
From the foregoing examination of the statutes of the two States, it is, I think, apparent that our own statute is quite as favorable to the maintenance of such an action as the statute of the State of Ohio; and hence that the cases above cited and decided in that State should be regarded as authorities upon the question now under consideration.
That this action can be maintained seems to me to be quite clearly and decisively sustained by the foregoing authorities. But the defendant cites, as sustaining a contrary doctrine, the cases of Lynch v. Knight, 9 H. of L. Cas. 577, and Van Arnam v. Ayers, 67 Barb. 544.
In the case of Lynch v. Knight a wife brought an action to recover damages from the defendant for slander uttered by him to her husband, imputing to her that she had been almost seduced by one Casserly before her marriage, and that her husband ought not to let Casserly visit at his house; and the ground of *300 special damage was, that in consequence of the slander the husband, forced her to leave his house and return to her father, whereby she lost the consortium of her husband ; and it was held that the cause of complaint set forth would not sustain the action, because the alleged ground of special damage did not show in the ponduct of the husband a natural and reasonable consequence of the slander. This is all that case in fact decides. The question whether a wife can maintain an action against a third person for words occasioning to her the loss of the conjugal society of her husband, was, however, discussed, and Campbell, Lord Chancellor, says: “Although this is a case of the first impression, if it can be shown that there is presented to us a concurrence of loss and injury from the act complained of, we are bound to say that this action lies. Nor can I allow that the loss of consortium or conjugal society can give a cause of action to the husband alone. If the special damage alleged to arise from the speaking of slanderous words, not actionable in themselves, results in pecuniary loss, it is a loss only to the husband, and although it may be a loss of the personal earnings of the wife while living separate from her husband, she cannot join in the action. But the loss of conjugal society is not a pecuniary loss, and I think it may be a loss which the law may recognize to the wife, as well as to the husband.” Upon this question Lord Wemsleydale thought otherwise. Lord Cranworth was strongly inclined to think the view taken by the Lord Chancellor was correct; while Lord Brougham was inclined to think Lord Wehsleydale’s view was the correct one. This case certainly does not sustain the doctrine contended for by the defendant; and, so far as it may be regarded as an authority upon this question, must, I think, be held to be an authority as much in favor of, as against, the right to maintain this *301 action. This case was referred to in Davies v. Solomon (7 L. Rep. Q. B. 112), but the question was not passed upon or discussed by the court in that case.
In the case of Van Arnam v. Ayers it was held, at special term of this court, that although a husband might maintain an action against a person for having persuaded, advised, and induced his wife to leave and abandon him, yet that an action could not be maintained by a married woman against a person for having by his wrongful acts, advice and persuasion induced her husband to abandon and become separate from her, whereby she is deprived of his society, support, maintenance and help. It seems to me that this case is in conflict, not only with the cases and authorities hereinbefore referred to, but v/ith the spirit and intent of the statute above quoted, and that the doctrine established by such authorities should be applied in deciding this case, rather than that of the Van Arnam case. I am therefore of the opinion that this action can be maintained.
The defendant also contends that the proof in this case was insufficient to sustain the action ; that it failed to sufficiently establish the fact that the defendant did not act in good faith in inducing the plaintiff’s husband to leave her. I do not think this claim can be sustained. Upon a careful examination of the evidence in the case, I am of the opinion that the evidence presented a question of fact as to whether the acts of the defendant were performed in good faith or not, that that question was properly submitted to the jury, and that their determination of it should be regarded as final.
This brings ns to the exceptions of the defendant to the admission of evidence. On the trial the plaintiff was called as a witness in her own behalf, and testified that she met her husband in Watkins. She was then asked, “ What did he say to you when he met *302 you?” This was objected to as improper testimony. The plaintiff’s counsel then proposed to prove the conversation that occurred between the plaintiff and her husband, to show the separation between the parties and the ground assigned for it. This was also objected to as improper, which was overruled, the court saying, “I will take that fact of separation.” This ruling was excepted to. The plaintiff then testified : I was going to the evening train, and met him coming from the house, and asked what was the matter ; and he said his father had come down there and persuaded him to come home ; I asked what he was •going to do with me ; said he was going to leave me ; said he had promised his father he would leave me.” The other evidence of which the defendant now complains was not objected to. Was the evidence admitted under the defendant’s objection admissible? The effect of this ruling was, at most, to permit the plaintiff to testify to the fact of the separation, and the reason assigned as a part of such act. I am of the opinion that the proof of the act of the husband in separating from and abandoning his wife was admissible ; and that proof of the act being admissible, his declarations at the time explanatory of that act were also admissible as a part of the res gesta.
Where it is necessary or proper in the course of a cause to inquire into the nature of a particular act, or the intention of the person who did the act, proof of what the person said at the time of doing it is admissible in evidence for the purpose of showing its true character (1 Phillips Ev. 231).
In Remsen v. Hay (14 Weekly Dig. 443), which was an action for enticing the wife of the plaintiff to leave her husband, it was held, that a conversation between a husband and wife in his house three days after she left him, stating that she would not return, which throws light upon the motives which induced *303 her to leave, is admissible as a part of the res gestee. See also Wilcox v. Green (23 Barb. 639), where it was held, that in an action for breach of a marriage promise, the defendant might show her acts in preparing for the marriage, and also that her declarations explaining such acts were admissible. This case was affirmed by the court of appeals in March, 1856.
I am of the opinion that this action can be maintained, and that there was no error on the trial requiring the granting of this motion. The defendant’s motion is therefore denied, with costs.