ANNA JAYNES, PLAINTIFF, *v.* ALFRED JAYNES, DEFENDANT.

*Husband and wife — the wife may sue a person for willfully enticing her husband away from her.*

The plaintiff, a married woman, brought this action to recover damages against the defendant for wrongfully and maliciously enticing her husband to abandon her and live apart from her, whereby she has lost the comfort and society of her husband and his aid in the support and maintenance of the plaintiff and their infant child, the issue of the marriage of the plaintiff with her said husband. After the plaintiff's counsel had opened the case by stating these facts, the court granted a motion for a nonsuit.

*Held,* error; that a wife has a right to the conjugal society of her husband, for the willful violation of which by a third person she may maintain an action in her own name.

Such right is her "separate property" within the meaning of that term as used in section 7, chapter 90 of 1860, as amended by section 3 of chapter 172 of 1862, or if that be not so, then it is a personal right for an injury to which an action is given by the said acts.

*Van Arnam* v. *Ayers* (67 Barb., 544) distinguished and not followed; *Breiman* v. *Paasch* (7 Abb. N. C., 249); *Baker* v. *Baker* (16 id., 293) followed.

MOTION by the plaintiff for a new trial, on exceptions taken at the Orleans County Circuit, and ordered to be heard at the General Term in the first instance.

*H. D. Tucker,* for the plaintiff.

*Sawyer & Bullard,* for the defendant.

SMITH, P. J.:

The plaintiff, a married woman, brings this action to recover damages against the defendant for wrongfully and maliciously enticing her husband, Arthur Jaynes, to abandon her and live apart from her, whereby she has lost the comfort and society of her husband and his aid in the support and maintenance of the plaintiff and their infant child, the issue of the marriage of the plaintiff with her said husband. At the trial, the plaintiff's counsel opened the case by stating the facts substantially as above set forth, and thereupon the defendant's counsel moved for a nonsuit, which was granted by the court.

{FIFTH DEPARTMENT, JANUARY TERM, 1886.

The only question presented is, whether a wife has a right to the conjugal society of her husband, for the willful violation of which, by a third person, she may maintain an action in her own name. We think the question should be answered in the affirmative. By the contract of marriage, at common law, the parties to it agree reciprocally to live together during the existence of the marriage, and each acquires a legal right to the society and companionship of the other. To that end the wife is bound to follow the husband wherever he may desire to establish himself, within the country of their domicile at the time of the marriage, unless by acts of injustice, or such as are contrary to his marital duties, the husband renders her life or happiness insecure (1 Bouv. Inst., 116, § 279), and she has the right to be provided with a home and all reasonable necessaries in his house, so long as she fulfills her own duties. (2 Kent's Com., 147.)

These reciprocal rights may be regarded as the *property* of the respective parties, in the broad sense of the word property, which includes things not tangible or visible, and applies to whatever is exclusively one's own. An unbroken series of decisions, from early times, holds that, for a willful invasion of the husband's right to the society of his wife, he may maintain an action for damages against the wrong-doer. His right of action is not put upon the technical ground of a loss of service, as is sometimes suggested, but it rests upon the loss of the conjugal affection and society of the wife. (*Weedon* v. *Timbrell*, 5 T. R., 357.) Thus it has been held that the husband cannot maintain the action against one who has committed adultery with his wife, after the husband has voluntarily separated from her, and so relinquished his right to her society. (Id.) So, it has been held that a husband may maintain an action for alienating the affections of his wife and inducing her to refuse to live with him *as his wife*, although she be not physically absent or separate from him, and there be no pecuniary loss, or loss of service by an actual leaving or continuing away from service. (*Heermance* v. *James*, 47 Barb., 120.) It is laid down by Bishop in his work on Marriage and Divorce (secs. 777 781, 782, 799), that the refusal of the husband or wife to dwell with the other party to the marriage, *as husband or wife*, is desertion. And he cites cases in which it has been held that there may be desertion

though the parties continue to occupy the same house. (1 Bish, on Mar. & Div., § 779 ; *Fishli* v. *Fishli*, 2 Little [Ky.], R., 337 ; *Moss* v. *Moss*, 2 Iredell [N. C.], R., 55.) The same writer says : " It may be laid down as a rule that if one party refuse to the other whatever belongs to marriage alone, *from causes resting in the will*, and not from physical inability, the refusing party would thereby voluntarily withdraw from whatever the relation of marriage, distinguished from every other relation subsisting between human beings, is understood to imply ; therefore, he should be holden to desert thereby the other." (Mar. and Div., § 782.) This doctrine accords with the cases which hold that a third person who willfully and wrongfully alienates the affections of a wife from her husband and induces her to deny him the conjugal society which the marriage contract implies, although she continues to reside with him in the same house, is chargeable with a violation of the legal rights of the husband and liable to him in damages therefor. As then the the husband's right of action does not rest upon the theory of a loss of service, or upon the idea that he is the superior and the wife the inferior, but stands upon the loss of the conjugal society or *consortium* promised by the marriage contract, no good reason is perceived for holding that the wife has not a legal cause of action on the like ground.

But as, at common law, the husband and wife were regarded as one person, and her personal rights were suspended, or incorporated with his, during coverture, so that if she were injured in her person or property, she could bring no action for redress without her husband's concurrence, and in his name as well as her own (1 Bl. Com., 443), she was practically precluded from suing for damages caused by alienating the affections of her husband and enticing him away. Her only remedies were to sue in the ecclesiastical court for a restitution of conjugal rights (3 Bl. Com., 94), or, in a proper case, to proceed under the statute for a limited separation (2 R. S., 147, § 51, subd. 3), or to have her husband dealt with as a disorderly person. (1 R. S., 638.)

Her disability in that respect, we think, has been removed in this State by legislation. A married woman may now, while married, sue and be sued in all matters having relation to "her sole and separate property," or for any injury to her person or character,

the same as if she were sole. (Laws 1860, chap. 90, § 7; amended, Laws 1862, chap. 172, § 3.) And it is not necessary or proper to join her husband with her as a party in any action or special proceeding affecting her separate property. (Code Civil Pro., § 450, as amended in 1879.) If we are correct in holding that the right, which the plaintiff alleges was invaded by the defendant in this action, was her separate property, the case is within the statutes referred to. If it be not property, in the sense in which the word property is used in the statutes cited, it is a personal right, and as the statute extends to all injuries, whether to property, person or character, it seems to be sufficiently comprehensive to embrace an injury to the right in question.

We are aware of only two reported cases in this State in which the question before us has been decided, and they are in conflict. In *Van Arnam* v. *Ayers* (67 Barb., 544) it was held, at a Special Term of this court, in a case similar to this, that the action is not maintainable. That decision was made before the amendment of section 450 of the Code of Civil Procedure above referred to, and, as is to be inferred from the report of the case, was controlled in part by section 114 of the old Code, for which section 450 of the new Code was substituted. The latter section, as amended, is much broader than the former one. The extract from Blackstone's Commentaries, upon which the court relied in part in Van Arnam's case, does not stand in the way of the views above expressed, for while that learned author says, in respect to the *relative* injuries of which he speaks, that notice is only taken of the wrong done to the *superior* of the parties related, while the loss of the inferior is totally unregarded, the only reason he assigns for the doctrine is that the inferior hath no *kind of property* in the company, etc., of the superior; and in regard to a wife, he says " the wife cannot recover damages for beating her husband, for *she hath no separate interest in anything* during her coverture. If the views above expressed are correct, the reason assigned by the learned commentator no longer exists in the case of a married woman. *Cessante ratione, cessat lex.*

In *Breiman* v. *Paasch* (7 Abb. N. C., 249), the General Term of the City Court of Brooklyn affirmed a Special Term decision, holding that the action will lie. *Van Arnam* v. *Ayres* was cited

by counsel but not followed by the court. NEILSON, Ch. J., who decided the case at Special Term, cited the cases of *Lynch* v. *Knight* (9 H. of L. Cas., 577), and *Westlake* v. *Westlake* (19 Alb. L. J., 494), decided by the Supreme Court of Ohio, under a statute which certainly went no farther than our own in enabling a married woman to sue alone and in her own name.

The learned counsel for the defendant argues that as the wife cannot maintain an action against her husband to compel specific performance of the marriage contract, nor to recover damages for its non-performance, she cannot maintain an action against a third person who persuades him not to perform his marital duties. The argument goes too far, for if it were sound it would prevent a husband from recovering damages against one who entices away his wife. Besides, while the law does not intervene between husband and wife to enforce the marital duties which each owes to the other, it may very properly give damages to the injured party against a wrong-doer by whose willful interference either is enticed away from the other.

Since the above was written our attention has been called to the case of *Baker* v. *Baker* (16 Abb. N. C., 293), decided by Mr. Justice MARTIN at Special Term, concurring with the case of *Breiman* v. *Paasch* (*supra*). The same question was decided the same way by Mr. Justice MACOMBER at the Monroe Circuit in October last.

We think the motion for a new trial should be granted, costs to abide event.

BARKER and BRADLEY, JJ., concurred; HAIGHT, J., not sitting.

Motion for new trial granted, with costs to abide the event.