SOPHIA L. PERRY *vs*. PHILADELPHIA, BALTIMORE AND WASHING-
TON RAILROAD COMPANY.

*Demurrer—Admissions—Common Carriers—Private Carriers—
Express Messengers—Messengers as Passengers—Con-
tracts Between Common Carriers—Contracts of Mess-
engers With Express Companies—Personal In-
juries—Actions—Survival Acts—Death
Acts—Recovery by Party Injured—
Settlement—Release—Effect on Ac-
tion for Death.*

1. A demurrer admits as true all material allegations which are well pleaded.

2. Railroad and express companies are each common carriers for the public; but each is a private carrier to the other.

3. A railroad company in carrying the business and messenger of an express company does so not as a common carrier, but as a private carrier; and, as such private carrier, it enjoys freedom of contract, and may stipulate for exemption from liability for injury and loss resulting from negligence or otherwise.

4. An express messenger occupying a car in charge of express matter under a contract between his company and a railroad company—each being a private carrier to the other—is not a passenger of the latter company.

5. A contract between an express company and a railroad company for carrying the business and employees of the former by which the express company assumed all risk of injury to its goods and employees, and agreed to keep the railroad company harmless from all loss arising therefrom, is valid, since the two companies sustain the relation of private carrier to each other.

6. A contract between an express company and its messenger by which the latter assumed all risk of injury for negligence of any railroad company when being carried by it in the performance of his services as messenger, made in consideration of his employment as such, and with the knowledge of and assent to a contract between the express company and a railroad company for carrying the business and employees of the former whereby it assumed all risk of loss and injury and indemnified the railroad company against all liability arising therefrom, from negligence

or otherwise is valid; for the reason that the railroad company in carrying the goods and messenger of the express company does so as a private carrier.

7.  At common law, a right of action to recover damages for personal injuries to the person was a personal right, and did not survive the death of the person injured.  *Kennedy vs. Del. Cotton Co.*, 4 *Penn.* 477; *Szymanski vs. Blumenthal*, 3 *Penn.* 558.

8.  By the enactment of what is known as "Lord Campbell's Act," there was clearly ingrafted an exception upon the common law by creating a new right of action for damages for death caused by a "wrongful act, neglect or default," etc., to a new class of persons.

9.  *Sec.* 1, *Chap.* 31, *Vol.* 13, (*Rev. Code*, 788), is distinctively a survival act of the common law or personal action brought to recover damages for injuries to the person, in the event of the death of the party injured before final judgment and satisfaction.

10.  *Sec.* 2, *Chap.* 31, *Vol.* 13, (*Rev. Code* 788), as amended by *Chap.* 120, *Vol.* 22, 500, providing that when death shall be occasioned by wrongful violence or negligence, and no suit be brought by the party injured to recover damages during his or her life, the widow or widower, etc., may maintain an action for and recover for the death and loss, is, in scope and purpose, substantially the same as the English statute upon the subject, and while the act creates a *new right*, it does not create a *new cause* of action.

11.  The death provision of the statute creates a new right of action in favor of the person or persons named in the statute, but such right of action is dependent upon the right of the party injured to maintain an action for personal injuries, had he not died in consequence of his injuries.

12.  The statutory action for damages for death and loss depends upon a concurrence of the death of the party injured, in consequence of his injuries, and the fact that no suit was brought by him therefor in his lifetime.

13.  If a decedent has done anything which would bar an action by him for personal injuries, the same will operate as a bar to the statutory action.

14.  Only one action can be maintained for the same negligent act or injury.  The chief difference between an action brought by the party injured for damages for personal injuries and by the person designated in the statute for death and loss, in consequence of such injuries, is in the measure of damages.  (Recognized in *Quinn vs. Johnson Forge Co.*, 9 *Houst.* 338.)

15.  A recovery by the party injured, or a settlement for and release

of damages made by him, after injuries, before death, as a result of the injuries will defeat an action for his death, for the reason that he, if living, could not thereafter maintain an action; so an exemption from liability for personal injuries, such as the law will permit, will bar an action for the death.

Del Statutes cited: *Sec.* 1, *Chap.* 31, *Vol.* 13; and *Sec.* 2, *Id.* as amended by *Chap.* 210, *Vol.* 22.

*(June* 28, 1910.)

Judges BOYCE and CONRAD, sitting.

*Alfred L. Polk* and *Alonzo L. Miles* (of the Baltimore Bar) for plaintiff.

*Charles W. Whiley, Frank M. Jones, John Biggs* and *Armon D. Chaytor, Jr.,* for defendant.

Superior Court, Sussex County, June Term, 1910.

SUMMONS CASE (No. 4, October Term, 1909), to recover damages for the death of plaintiff's husband.

Demurrer to pleas overruled, and at the election of the plaintiff, final judgment entered, and exception noted for her.

Writ of error sued out of Supreme Court by plaintiff.

BOYCE, J., delivering the opinion of the Court:

This action was brought by Sophia L. Perry, the plaintiff, against the Philadelphia, Baltimore and Washington Railroad Company, the defendant, to recover damages for the death and loss of William O. Perry, husband of the plaintiff, alleged to have been occasioned by the negligence of the defendant company.

The plaintiff's declaration contained eight counts. The general averments in each were, in effect, that the said deceased, was, on the morning of the twenty-second day of February, A. D. 1909 (in the night time) employed by the Adams' Express Company as a messenger, and as such, was lawfully in a car provided

by the defendant company for the express company, attached to a certain train of the defendant company, then running on the railroad of the defendant company, between Philadelphia, in the State of Pennsylvania, and Delmar, in the State of Delaware, and that while so in and upon said car and train, in the performance of his duties as such messenger, the defendant company, upon approaching Delmar, negligently permitted its said train to collide with two certain locomotive engines of the defendant company on its tracks, and killed said express messenger as a result thereof. The several counts are similar in their general averments, but they charge varying acts of negligence, which, for the purpose of the questions before us, are not necessary to be set forth.

To the first six counts, the defendant pleaded (1) not guilty; (2) release; and (3) act of limitation. The plaintiff filed replications and issues to those pleas. The defendant company, by a further (4th) plea to each of said six counts, pleaded a certain contract of indemnity previously entered into between the express company and the defendant company, by which the former in substance assumed, among other things, all risk of injury to its employees and agreed to hold the latter harmless from all loss, cost and damages arising therefrom, etc. The defendant company also, by a further (5th) plea to each of said six counts, pleading in bar of this action, a certain other contract of release entered into between the express company and the deceased, before the accident and after the execution of said contract between the express company and the defendant company, by which the deceased, in substance, assumed all risk of injury, "whether resulting from the negligence of any corporation or person engaged in any manner in operating any railroad or of any employee of any such corporation or person, or otherwise, and whether resulting in his death or otherwise," etc. To the said fourth and fifth pleas were added alleged copies of the agreements entered into. To the seventh and eighth counts, the defendant also demurred. The plaintiff demurred to the said fourth and fifth pleas, and filed a joinder in demurrer to said seventh and

24 Del.]  PERRY vs. P., B. AND W. R. R.  403

Opinion.

eighth counts.  The defendant company filed a joinder in de-
murrer to said fourth and fifth pleas.  The plaintiff was per-
mitted to withdraw the said seventh and eighth counts, and
argument was heard on the demurrer to said fourth and fifth
pleas.

A demurrer admits as true all material allegations which are
well pleaded.  The due execution of the said contracts of in-
demnity and release must be taken as admitted on the record, at
this time.

The contention of counsel for the plaintiff was to the effect
(1) that although the deceased was, at the time of the accident, a
messenger of the said express company, he was, nevertheless, in
law, a passenger of the defendant company for hire; and that,
therefore, the said alleged contract of release entered into be-
tween him and the express company was void as against that
rule of public policy which denies the right of a common carrier,
in such case to stipulate for exemption from responsibility for
injuries in consequence of negligence; (2) that the said contract
as between the deceased and the defendant company was void for
want of consideration to support it; (3) that the said contract of
release did not operate as a bar to this action for the reason that
the statute, under which it was brought, vested in the widow of
the deceased, a new right of action for damages for the death and
loss of her husband, resulting from the negligence of the defendant
company, independent of the right of action which her husband
might have had for his personal injuries had he survived them;
and (4) that the said contract of release from liability for damages
for prospective injuries, resulting in the death of plaintiff's hus-
band, was not binding upon her, and did not operate as a bar to
her action under the statute.

Counsel for the defendant contested each of these proposi-
tions, and insisted that the said contract of the deceased with the
express company, was effective as a bar to recovery in this action.

We shall consider the first and second questions presented together and likewise the third and fourth.

Whether an express messenger, in the performance of his services as such, being carried by a railroad company in a car provided for the express company, under a contract between the latter and the railroad company, is, or is not, a passenger of the railroad company for hire, is a question upon which the decisions are not in harmony.   The leading case of *Baltimore Etc. R. Co. vs. Voigt,* 176 *U. S.* 498, reversing 79 *Fed. Rep.* 561, was substantially in all respects like this, except the injuries to the express messenger in that case did not result in his death.   He survived his injuries and was the plaintiff in that action.   That case also arose on a demurrer to the second defense of the defendant, setting up, in bar of the action, very similar contracts of indemnity and release to those relied upon in this case.   The decision of the court below went upon the ground that although Voigt, the plaintiff, was an express messenger riding upon an express car, in the circumstances stated, he was a passenger for hire and entitled to the rights accorded by law to ordinary passengers traveling by a train of a common carrier, and further that it was not competent for the defendant company to absolve itself from the duties which rest upon a common carrier in reference to its passengers.

The question involved in error to the Circuit Court of Appeals for the sixth circuit, was whether, in point of law, a railroad company as towards a messenger of an express company, occupying a car of the railroad company assigned to the express company for the prosecution of its business, under a contract fixing the relations of the railroad company and the express company, which, for the consideration shown by the contract, absolves the railroad company from the consequences of its negligence to the express company and its employee, and to which the employee agrees upon entering the service of the express company, stands in the ordinary relation of a common carrier of passengers for hire to the employee of the express company, so as to render the railroad company liable as such to the express messenger for personal injuries notwithstanding such contracts.

The circuit Judge below, against whose judgment the writ of error issued, thought the case could not be distinguished from the case of *Railroad Company vs. Lockwood*, 17 *Wall*. 357, in which it was held that a drover traveling on a pass for the purpose of taking care of his stock on the train is a passenger for hire, and that it is not lawful in such a case for a common carrier to stipulate for exemption from responsibility for the negligence of himself or his servants.

The members of the Circuit Court of Appeals, being in doubt upon the question before them, ordered that the question propounded by the said Court, based upon the facts of the case, be certified to the Supreme Court of the United States, which was done.

Mr. Justice Shiras, in delivering the opinion of the Supreme Court upon the question so certified, Justice Harlan dissenting, said: "This case" (*Railroad Co. vs. Lockwood*, 17 *Wall*. 357) "has been frequently followed, and it may be regarded as establishing a settled rule of policy," and cited *Railway Co. vs. Stevens*, 95 *U. S.* 655, and *Liverpool Steam Co. vs. Phoenix Ins. Co.* 129 *U. S.* 397. He then pointed out the principle underlying those cases by referring to the importance which the law justly attaches to human life and personal safety etc., and to the position of advantage which is possessed by companies exercising the business of common carriers over those who are compelled to be with them, and he recognized that the object of the law in the first instance was to secure the utmost care and diligence on the part of common carriers in the performance of their important duties; and, in the other, to prevent unreasonable and unjust exemptions from liability for losses to shippers, or injuries to passengers. He then said "we have here to consider not the case of an individual shipper or passenger dealing at a disadvantage, etc., but that of a permanent arrangement between two corporations," etc., meaning, of course, the railroad company and the express company. He then proceeded to make extracts from the opinion in the Express Cases (117 *U. S.* 1) to show particularly that, in essence, the

express business is one that requires the participation of both the railroad and express companies on terms agreed upon in special contract. He found in the statement made by the judges of the said Circuit Court of Appeals that the said railroad and express companies were doing an express business together as common carriers under a special contract or agreement previously entered into between them, and that by said contract it was agreed that the railroad company would furnish on its line between, etc., for the express company, cars adapted to the carriage of express matter over said line; that one or more employees of the express company would accompany said goods in said cars over said line, and for such purpose would' be transmitted in said cars free of charge; that the express company would protect the railroad company and hold it harmless from all liability for injury sustained by the employees of the express company while being transported for the said purpose over the railroad; that Voigt, the defendant in error, had agreed in writing to indemnify the express company against any liability it might incur by reason of said agreement between the companies so far as he was concerned; and had further agreed to release the railroad company from liability for injuries received by him while being transported in the express cars; that in consideration of such agreement on his part, Voigt was employed as an express messenger, and subsequently while so employed, and while occupying as such messenger a car assigned to the express company, received injuries occasioned by a collision between the train which was transporting the express car and another train belonging to the said railroad company. The Justice then said "it is evident that by these agreements there was created a very different relation between Voigt and the railroad company than the usual one between passengers and railroad companies. * * * He was on the train, not by virtue of any personal contract right, but because of a contract between the companies for the exclusive use of a car. His contract to relieve the companies from any liability to him, or to each other, for injuries he might receive in the course of his employment, was deliberately entered into as a condition of securing his

position as messenger.  His position does not resemble the one in consideration in the Lockwood and similar cases, where the dispensation from liability for injuries was made a condition of a transportation which the passenger had a right to demand, and which the railroad companies were under a legal duty to furnish. Doubtless, had Voigt desired only the method of transportation afforded the ordinary passenger, he would have been entitled to the rule established for the benefit of such a passenger.  But this he did not desire.  He was not asking to be carried from, etc., but was occupying the express car as part of his regular employment, and as provided in a contract which, as we have seen, the railroad company was under no legal compulsion to enter into.  It is manifest that the relation existing between express messengers and transportation companies, under such contract as existed in the present case is widely different from that of an ordinary passenger."  *  *  *  He then reviewed several State cases in which the subject under consideration had received attention, and showed that the same conclusion had been reached by the courts therein as he afterwards announced in the case.  The cases cited were *Bates vs. Old Colony Railroad*, 147 *Mass.* 255; *Hosmer vs. Old Colony Railroad*, 156 *Mass.* 506; *Robertson vs. Old Colony Railroad*, 15 *Mass.* 526; *Griswold vs. New York & New England Railroad*, 53 *Conn.* 371; *Coup. vs. Wabash, St. Louis and Railway Co.*, 56 *Mich.* 111; *Louisville, New Albany and Chicago Railway vs. Keefer*, 146 *Ind.* 21; *Pittsburg, Cincinnati, Etc. Railway vs. Mahoney*, 148 *Ind.* 196; *Bank vs. Illinois Central Company*, 80 *Ill. App.* 475, affirmed in 182 *Ill.* 332; *Bissel vs. New Yory Central Railroad*, 25 *N. Y.* 442 and *Poucher vs. New York Central Railroad*, 49 *N. Y.* 267.  As against these authorities, there were cited, on behalf of the defendant in error, several cases in which it had been held that postal clerks, in the employ of the Government, and who pay no fare, were entitled to the rights of ordinary passengers for hire, and it was contended that their relation to the railroad was analogous to that of express messengers.  *Arrow Smith vs. Nashville & Decatur Railroad*, 57 *Fed. Rep.* 165; *Gleeson vs. Virginia Midland Railroad*, 140 *U. S.* 435; *Hitcham vs. New

*York, Lake Erie, Etc., Railroad,* 133 *Ind.* 346; *Segbolt vs. Railroad Co.,* 95 *N. Y.* 562.

But Justice Shiras said "there is, however, an obvious distinction between a postal clerk and the present case of an express messenger in this, that the messenger has agreed to the contract between the express and the railroad companies, exempting the latter from liability, but no cases have been cited in which the postal clerk voluntarily entered such an agreement." * * *

There were also cited on behalf of the defendant in error, the cases of *Brewer vs. New York, Lake Erie & Western Railroad,* 124 *N. Y.* 59; and *Kenny vs. N. Y. Cent. Railroad,* 125 *N. Y.* 422, which were express messenger cases. The Justice pointed out the fact that the Court in the first of these cases put its judgment against the railroad company expressly upon the ground that the messenger had no knowledge or information of the contract between the companies and was not himself a party to the agreement to exempt the railroad company, and in the other that it did not appear there had been any assent to, or knowledge of the contract, on the part of the messenger. And the case of *Chamberlain vs. Pierson,* 59 *U. S. App.* 55, also relied upon was in principle like the last two cases cited. The conclusion of the Court was that Voigt "occupying an express car as a messenger in charge of express matter, in pursuance of the contract between the companies was not a passenger within the meaning of the leading case of *Railroad Company vs. Lockwood;* that he was not constrained to enter into the contract whereby the railroad company was exonerated from liability to him, but entered into the same freely and voluntarily, and obtained the benefit of it by securing his appointment as such messenger, and that such a contract did not contravene public policy." * * *

The case of *Louisville, New Albany, and Chicago Railway Company vs. Keefer* (*supra*) was in all material respects like the Voigt case. Keefer was employed as an express messenger by the American Express Company which was carrying on the express business over a road of the appellant. The contracts between the railroad and express companies, and between the

latter and Keefer were in terms very similar to those relied upon both in the Voigt and this case. The appellant demurred to the complaint for want of facts and answered in three paragraphs. Appellee demurred to the second and third paragraphs of answer. The demurrer to the complant was overruled, and the demurrer to the second and third paragraphs of answer was sustained. The case was tried by a jury and a verdict was had for the appellee. The judgments of the Court on the demurrers were assigned as errors. The third paragraph of answer set up the said contracts in defense of the action. The judgment of the Court below was reversed with instructions to overrule the demurrer to the third paragraph of answer. It was said by the Court "under the doctrine declared in the express cases (117 *U. S.*, 1) the property was being carried by appellant, not as a common carrier in the performance of a public duty, but being carried, with a messenger in charge, as a private carrier, the right to have it and him carried having first been secured to the express company by private contract, the only way known to the law by which the right, either as to the goods or appellee as express messenger in charge, could be acquired. Appellee when he went on the appellant's train and took charge of express packages in the baggage car, did not go as a passenger who merely desired to be carried on the train from one point to another. Carriage was not the object of his going upon the train, that was merely incidental. His purpose was not to be upon the train, in the cars provided for passengers, but that he might handle and care for the property of his employer thereon, in the space set apart in the baggage car for that purpose. Under the authorities cited, it was not the duty of appellant, as a common carrier, to carry for the express company the goods or messenger in charge of them. The contract between appellant and the express company gave it and its messengers rights which appellant as a common carrier could not have been compelled to grant."

*Bates vs. Old Colony R. R. Co.*, (*supra*) and *Hosmer vs. Old Colony R. R. Co.*, (*supra*).

The case of *Bank vs. The Ill. Cent. R. Co.*, 182 *Ill.* 332 (*supra*),

affirming the judgment of the appellate Court, 80 *Ill. App.* 475 was another express messenger case. Appellant was an express messenger of the American Express Company, and was at the time of the accident in the performance of his duties, as such messenger, in the forward half of a baggage and express car, being the portion of the car furnished by appellee to the express company for its business on appellee's lines. The appellant was injured, and he sued the appellee for damages. He alleged in both counts of his declaration that he was upon the car in the discharge of his duties as messenger for the express company, and charged in the first count, negligence in allowing a freight train to stand on the side track in such a manner as to collide with it; and in the second, negligence in running the express car against the side-tracked train. After all the evidence was in, the Court instructed the jury to find the defendant not guilty, which was done, etc. At the trial, the defendant proved and introduced in evidence a contract made by the plaintiff with the express company to secure employment similar to that pleaded in the fifth plea in the present case, also a contract referred to in plaintiff's said contract, made by the express company with the defendant company in order to have its merchandise and property and employees carried by the defendant upon its line, by which the express company agreed to indemnify and save harmless the defendant against all liability for loss, etc., similar to that pleaded in the fourth plea in the present case. The main question concerned the validity and legal effect of plaintiff's said contract. It was contended that it was void as against public policy. The Court said: " The question is whether the defendant had a right in taking the express company and its business and employees upon its road to make the contract that it should not be liable for the negligence of its employees."

" It is insisted that the plaintiff occupied the position of a passenger for hire, and that public policy will not permit a contract to be made releasing a carrier from liability to a passenger for its negligence. If the defendant was a common carrier of the American Express Company and its goods and messengers

24 Del.]　　　Perry vs. P., B. and W. R. R.　　　411

Opinion.

doing business on the line and in the express car in question, the authorities cited in support of that position would be applicable; but it seems to be settled that a railroad company is not a common carrier of common carriers and their business. Each of the parties is a common carrier for the public, and the railroad company is not bound to furnish facilities to every express company that applies for carrying on its business on its road. It is not charged with the duty of carrying express companies at all, and is therefore entitled to make a contract establishing the duty and liability of the road on its side and of the express company on the other. The Supreme Court of the United States so held in the express cases (117 *U. S.* 1) * * *. Plaintiff was being carried for the sole purpose of handling and caring for the express company, goods which were being carried under the terms of a special contract and which the defendant was not bound otherwise to carry at all. The question, whether, under such circumstances, a contract relieving the carrier from liability for negligence merely, is valid, has several times been considered. The principle was sustained in *Bates vs. Old Colony R. R. Co.*, 147 *Mass.* 255 and *Hosmer vs. Old Colony R. R. Co.*, 156 *id.* 506; and in two cases in Indiana contracts in all respects like those made in this case have been sustained by the Supreme Court. (*L. N. A. & C. R. R. Co. vs. Keefer*, 146 *Ind.* 21; *P., C., C. & St. L. R. R. Co. vs. Mahoney*, 148 *id.* 196). The contract gave the express company and plaintiff, as its messenger, rights which defendant, as a common carrier, could not have been compelled to grant, and in such a case a carrier may contract as a private carrier, and require exemption against liability for negligence as a condition of granting such rights. An agreement to take and carry property in such a case, under such conditions, as the parties agreed upon, is held not to be against public policy." The Court then, after reviewing and commenting upon the case of *Voigt vs. Balto. etc. R. R. Co.*, 79 *Fed. Rep.* 561, which, as we have seen, was subsequently reversed by the Supreme Court of the United States, in 176 *U. S.* 498, said: "We do not see how it could follow that because a person who is an express messenger might be a passenger on a passenger car he is also a passenger while doing his employer's

business in the express car. The reasoning of the other Courts seems to us the sounder and better." Other cases supporting the same doctrine are *Chicago etc. R. Co. vs. O'Brien*, 132 *Fed. Rep.* 593; *Long vs. Lehigh Valley R. Co.*, 130 *Fed. Rep.* 870; *Robinson vs. St. Johnsbury, etc. R. Co.*, 80 *Vt.* 129; *Peterson vs. Chicago etc. R. Co.*, 119 *Wis.* 197; and *D. & R. G. R. Co. vs. Wahn*, 39 *Colo.* 230. There are other cases than those which have been cited as not supporting the doctrine of the Voigt case but which we will not review. Some of them are *Davis vs. Chesapeake etc. R. Co.*, 122 *Ky.* 528; *Fordyce vs. Jackson*, 56 *Ark.* 594; *Weoyman vs. Contra Steam Nav. Co.*, 44 *Cal.* 71; *Kentucky Cent. R. Co. vs. Thomas*, 79 *Ky.* 160; *P. R. R. Co. vs. Woodworth*, 26 *Ohio State*, 565; *Gulf etc. R. Co. vs. Wilson*, 79 *Tex.* 371; and *Shannon vs. Chesapeake etc. R. Co.*, 104 *Va.* 645.

In the absence of local legislation influencing and controlling the courts, it may be said generally, that in cases where the express messenger had knowledge of and assented to the private contract between the express company and the railroad company, and he himself, in consideration of employment by the express company, voluntarily exempted the railroad company from liability for negligence, the doctrine announced in the Express Cases and the Voigt case is approved and followed. In some jurisdictions, for instance, Virginia, Kentucky and Kansas, constitutional or statutory provisions respecting employees constrain the courts thereof to hold such contracts void as being contrary to the policy of such provisions. With these exceptions we find that the decided weight of authority sustains such contracts as not against public policy; for the reason that a railroad company in transporting goods for an express company does so not as a common carrier, but as a private carrier; and as such private carrier, it enjoys freedom of contract and may stipulate for exemption from liability for injuries and loss resulting from negligence or otherwise. Under the doctrine declared in the Express Cases approved and applied as it now generally is, we cannot in harmony with the current and great weight of authority do otherwise than conclude that both the property of the express company

and Perry, the plaintiff's husband, were being carried by the defendant company, at the time of the accident, not as a common carrier in the performance of a public duty but as a private carrier with the right of private contract, such as, in this case, secured the right of conveyance of both; and that the relation of the defendant company towards the express company being that of a private carrier, it was competent for the defendant company to contract with the express company as it did and that the contract between Perry, the messenger, and the express company was not, for reasons shown, in contravention of public policy.  And, in consideration of his employment by the express company for the wages agreed upon between them, the contract as between him and the express company was valid and his said contract with the express company, he having expressly assented to and ratified the contract entered into between the express company and the defendant company, is sufficient in the absence of local law, to preclude him, had he survived his injuries, from a recovery against the defendant company, for personal injuries though occasioned at the time and under the circumstances alleged in the plaintiff's declaration.

Having concluded that the contracts relied upon in defense of this action would be effective to relieve the defendant company from liability in an action brought by the plaintiff's husband to recover damages for personal injuries to him, occasioned by the negligence of the defendant company, had death not ensued, are they ineffective in bar of this action for the reason, as contended by the plaintiff, that the statute, under which this action was brought, vested in the plaintiff, the widow of the deceased, a new right of action for damages for the death and loss of her husband, over which he had no control and independent of the right of action, which her husband might have had for personal injuries had he survived them?  This question, in effect, embraces the last two propositions presented by counsel for the plaintiff.  In the consideration of this question, it may aid to a clearer exposition to refer briefly to the state of the law respecting personal actions for injuries before the enactment of statutes similar to that under which this action was brought.

At common law, a right of action to recover damages for personal injuries to the person was a personal right, and did not survive the death of the person injured.

*Higgins vs. Butcher, Helv.* 89, (1606); *Bigger vs. Bolton First Campb.* 493, (1808); *Ins. Co. vs. Brown,* 95 *U. S.* 745; *Carey vs. R. Co.* and *Skinner vs. R. Co.* (considered together), *First Cush.* (*Mass.*) 475; *Kennedy vs. Delaware Cotton Co.,* 4 *Penn.* 477; and *Szymanski vs. Bluementhal,* 3 *Penn.* 558. In *Higgins vs. Butcher* (*supra*), in the King's Bench, it was sought to recover damages of the defendant for assaulting and beating the wife of the plaintiff, death having resulted in consequence of the injuries inflicted. It was held by the Court that there could be no recovery, as, the injury having resulted in death, the cause of action, therefore, was merged in the felony. The announcement made by Lord Ellenborough, in the leading case of *Baker vs. Bolton* (*supra*), that "the jury could only take into consideration the bruises which the plaintiff had himself sustained, and the loss of his wife's society, and the distress of mind he had suffered on her account from the time of the accident until the moment of her dissolution," was thereafter recognized as the law in England, not without criticism, until the doctrine was changed by legislation. After that decision, the rule, well known, was that "in a civil court the death of a human being could not be complained of as an injury."

This doctrine was long regarded as one of the imperfections in the common law, and in England, it was remedied by the enactment (in 1846) of what is known as *Lord Campbell's act,* 9 and 10, *Vict.Chap.* 93, after which the many statutes in this country have been more or less modeled.

The purpose of that act, as shown by its language, was to create an action for compensatory damages for the benefit of the families of persons whose "death shall have been caused by wrongful act, neglect, or default, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof." * * * By its enactment there was clearly en-

grafted an exception upon the common law by creating a new right of action for damages to a new class of persons. The act was in no sense a survival of the personal action of the party injured, in the event of his death, as a result thereof. In this country, statutes of the survival kind, providing that personal actions to recover damages for injuries by violence or negligence shall survive the death of the party injured are frequently found side by side with acts similar in character and purpose to Lord Campbell's act. But, as we have said, there was nothing of the survival character in the latter act. That act is distinctly what is sometimes called a death act as distinguished from what are known as survival acts. The decisions are not in accord upon the question whether there may be recoveries under the common law right of action by the party injured, in his lifetime, or after his death by his personal representatives, in accordance with a survival provision, and also under the statutory right of action created by the other provision, which, as we have said, is sometimes called the death act. The conflict in the decisions is due, we think, to the varying character or details of the several acts, as well as, doubtless, to some confusion, on the part of legislatures, respecting the purposes of the two provisions. In some instances the provisions intended for the same purpose as was the English act seem applicable to cases covered by survival acts. Our statute upon the subject was enacted in 1866, it being *Chapter* 31, *Volume* 13, *Laws of Delaware, Revised Code* (1893), *page* 788. *Section* 1 thereof, is distinctly a survival act of the common law of personal action brought to recover damages for injuries to the person, in the event of the death of the party injured before final judgment and satisfaction. *Section* 2, as amended, in 1901, *by Chapter* 210, *Volume* 22, *Laws of Delaware, page* 500,. reads: "Whenever death shall be occasioned by unlawful violence or negligence, and no suit be brought, by the party injured to recover damages during his or her life, the widow, or widower, of any such deceased person, or if there be no widow, or widower, the personal representatives may maintain an action for and recover damages for the death and loss thus occasioned." This provision, in scope and purpose, is substantially the same as the English

statute. Under the construction given the latter act by the English courts, no new cause of action has been created thereby.

In *Blake vs. Midland Ry. Co.*, 18 *Rex. Q. B.* 93, Coleridge, J., having Lord Campbell's act under consideration, said: "This act does not transfer this right of action to his representatives, but gives to his representatives a totally new right of action, on different principles." Lord Blackburn, in *Seward vs. The Vera Cruz*, 10 *App. Cas.* 59, said: "A totally new action is given against the person who would have been responsible to the deceased if the deceased had lived,—an action which * * * is new in its species, new in its quality, new in its principle, in every way new, and which can only be brought if there is any person answering the description of the widow, parent, or child, who, under such circumstances, suffers pecuniary loss." In *Read vs. Great Eastern Ry. Co.*, L. R. 3 Q. B. 555; Blackburn, J., said: "The action is not new in the sense that there is an independent cause of action vested in the representatives of the deceased in their own right * * *. I think it (the statute) meant to say that, if the party injured had not in his lifetime received compensation, the defendant would be liable to an action by the executor for the loss which they had sustained from his death." In the same opinion, Lush, J., said: "I am of the same opinion. The intention of the statute is not to make the wrong-doer pay damages twice for the same wrongful act, but to enable the representatives of the person injured to recover in a case where the *maxim actio personalis etc.* would have applied. It only points to a case where the party injured has not recovered compensation against the wrong-doer." In *Griffiths vs. Earl of Dudley*, 9 L. R., Q. B. D., 357, the widow of her deceased husband sued under an amendment (*Act* 27 & 28, *Vic. c.* 95) of Lord Campbell's act, which amendment, supplying the mode of procedure, entitled a widow to sue if the personal representatives did not sue within six months. It was urged that the widow obtained a new and independent right by virtue of Lord Campbell's act. Field, J., said: "There is no doubt that the subsequent act, * * * gives her a right to sue, independently of her character as her husband's representative, * * * but she gains no new cause

of action.   *Read vs. Great Eastern Ry. Co.* is a clear decision that Lord Campbell's act did not give any new cause of action, but only substituted the right of the representative to sue in the place of the right which the deceased himself would have had if he had survived."   Cave, J., in the same opinion, said: "*Read vs. Great Eastern Ry. Co.* has decided that the act gives no new cause of action to the relatives, but only a right in substitution for the right of action which the deceased would have had if he had survived.   We are bound by that decision; and the cases cited by Mr. Jelf (*Bradshaw vs. Lancashire and Yorkshire Ry. Co. L. R.* 10, *C. P.* 189, and *Leggott vs. Great Northern Ry. Co.*, 1 *Q. B. D* 599,) are not in conflict with it."   These decisions and others unmistakably show that the English courts did not consider that Lord Campbell's act vested in the relatives of the deceased a new or independent cause of action, but simply a new right of action for their benefit, if the deceased had not in his lifetime received compensation for the same, upon which, in the event of his death, the new action was founded.   We have examined a great many American cases dealing with the question but we cannot without further burdening this opinion, review or even cite all of them.

*Littlewood vs. Mayor, etc. of* N. Y., 89 *N. Y.* 24, was an action brought to recover damages for the death of the plaintiff's intestate, alleged to have been caused by defendant's negligence. It was alleged in the answer to the complaint and admitted that the intestate, during his lifetime brought an action to recover for his injuries, and recovered judgment which had been paid.   It was urged, notwithstanding this fact, that the statute did not limit the right of recovery of the next of kin to cases where their intestate did not recover a personal satisfaction.   It was said by Rapallo, J.: "The language of the act plainly indicates, I think, that the framers had in view a common law rule '*actio personalis,*' *etc.*, and that their main purpose was to deprive the wrong-doer of the immunity from civil liability afforded by that rule.   *   *   * The condition upon which this statutory liability depends is declared to be 'that the act, neglect, or default, is such as would (if death had not ensued) have entitled the party injured to main-

tain an action and recover damages', etc.  *  *  *  The form of expression employed in the act shows that the legislature had in mind the case of a party *entitled* to maintain an action, but whose right of action was by the rule of the common law extinguished by his death, and not the case of one who had maintained this action and recovered damages.  *  *  *  It seems to me very evident that the only defense of which the wrong-doer was intended to be deprived, was that afforded him by the death of the party injured, and that it is, to say the least, assumed throughout the act that at the time of such death the defendant was liable.  *  *  *  The statute may well be construed as meaning that the party who at the time of the bringing of the action 'would have been liable if death had not ensued' shall be liable to an action notwithstanding the death," etc.

The case of *Pym. Admx. vs. Great Northern Ry. Co.*, 2 *Best. & Smith*, 761 and *s. c.* 4 *B. & S.* 397, decided before the *Read* case, and *Bradshaw vs. Lancashire etc. Ry. Co.*, L. R. 10 *C. P.* 108 to 9, and *Leggott, Admx. vs. The Great Northern Ry. Co.*, L. R. 1 *Q. B. D.* 599, both decided after the Read case, were relied upon by the plaintiff, but after commenting upon them, the Court said: "I find no inconsistency between these cases and the Read case, nor does the authority of that case or its reasoning appear ever to have been questioned."

The case of *Hill vs. P. R. R. Co.*, 178 *Pa. St.* 223, was an action by the widow of her deceased husband, who was injured in a. collision on the defendant's road.  Shortly after his injury he settled with the defendant company for all claims and demands on account of the accident, and executed an absolute release of all demands for an agreed sum, which was paid to and accepted by him.  Substantially the question was, under the existing legislation, and upon the facts of the case, whether the plaintiff, as widow of the deceased, had an independent right of action, which the husband's said release could not affect.  *Sections 18 and* 19, *Pub. Laws* (1851), *p.* 674, were each in the precise language of the two sections of our act.  The question before the Court was one of construction of said two sections.  It was said by the Court:

"The basis of the action is the negligence of the defendant. When the injured person survives, the sole right of action is vested within himself alone.  If he brings an action, and it is tried, and results in a verdict and judgment for the plaintiff, which is paid, it must be conceded that this is the end of the case. The defendant's negligence has been tried and adjudged, and, when the judgment has been discharged by payment, it has been satisfied for all purposes.  The consequences of the transgression have been suffered, and the penalty paid.  We cannot consider, and it has not been so decided, that in this contingency there may be another suit brought for another result of the same act  of negligence.  The acts we are considering do not confer any such right, nor any right to recover as upon an additional cause of action.  In other words, without these acts a cause of action for a specific act of negligence would have died with the person, and there could be no recovery by anybody.  But that consequence of the existing state of the law it was desired to avert, and under the acts the action does not die, but survives to certain persons named.  But it is an action for the same injury and upon the basis of this same negligence."  *   *   *

In the case of *Birch vs. Pittsburg  C. C. & St. L. R. Co.*, 165 *Pa.* 339, the Court said: "While (the action is) grounded on the same unlawful violence or negligence for which the injured party had a common law right of action in his lifetime, the statutory right given by the nineteenth section is  conditioned upon the concurring facts that the injured party's death was occasioned by said violence or negligence, and that no suit for damages was brought by him."

The case of *Thompson vs. Fort Worth & Rio Grande Railway Co.*, 97 *Tex.* 590, was heard upon question certified from the Court of Civil Appeals, Third District, to the Supreme Court of Texas.  After the deceased had been injured, and after he had brought his action to recover damages for his injuries, and before he died, he made settlement with the defendant and executed a release of all claims.  The controlling question was whether the widow and the children, the plaintiffs, were concluded by  the

settlement and the release, made and executed by the deceased in his lifetime. The Court said: "In those States which have followed Lord Campbell's act in their legislation upon the subject, the courts have uniformly held that there is but one cause of action under the law for which there can be but one compensation, hence if the injured party sues and recovers compensation for his injuries, or compromises his claim with the wrong-doer and for a valuable  consideration executes a release therefor, the cause of action is thereby satisfied and no right of action remains to the persons named in the statute."

Southern Bell Telephone etc. Co. vs. Cassin, 111 Ga., 575; Pierce vs. Richmond etc. R. Co., 33 S. C. 556; Hill vs. P. R. R. Co., 178 Pa. St. 223; Legg vs. Britton, 64 Vt. 652; Hecht vs. Ohio etc R. Co., 132 Ind. 507; Littlewood vs. N. Y. etc., 89 N. Y. 24; and Tiffany on Death by Wrongful Act, Sec. 124.

The case of Sweetland vs. Chicago & G. T. R. Co. 43 L. R. A. 568 (Mich.) was brought to recover damages for personal injuries caused to the plaintiff's intestate by the collision of defendant's train through the negligence of the defendant, also for the death of the intestate resulting from the collision, and for loss of personal property.   The declaration contained three counts,—(1) upon the common law liability for pain and suffering, etc., prior to death, which, it was insisted, survived under the statute for the benefit of the estate; (2) for loss of personal property; and (3) for the death for the benefit of the next of kin, in whose interest the administrator claimed the right to recover under another provision of the statute.   Verdicts were had in favor of the plaintiff under the first and second counts.   The jury found in favor of the defendant under the third count.   The defendant brought error.   By Section 7397, as amended, it was provided that "in addition to the actions which survived by the common law  the following shall also survive  *  *  *  'for negligent injuries to persons.' "   It was said that Sections 8313 and 8314 are substantially a re-enactment of Lord Campbell's act.   The latter section related to matters of procedure; etc.   "Was it, asked the Court, the intention of the legislature under Section 7397 to give

a right of action for the benefit of the estate in case of death from an injury, and also to allow the heirs to recover under *Sections* 8313 and 8314 for their pecuniary loss?    I think not.    The fact that the common law right of action which survives under *Section* 7397 is for the benefit of the decedent's estate and that the right of action under *Sections* 8313 and 8314 is given for the benefit of the decedent's heirs, can make no difference in the construction which I think must be placed upon these statutes.    It was not the intention of the legislature to give two rights of recovery for the same injury which results in death."    *    *    *    It was conceded by the Court that some language in *Hirst vs. Detroit City R. Co.*, 84 *Mich.* 544, might be taken as holding that satisfaction under one of said statutes would be no bar to a suit under the other, but it was said that that question was not involved in that case, and the language was but mere dictum.    Reference was made to the case of *Needham vs. Grand Trunk R. Co.*, 38 *Vt.* 294, in which it was seemingly held that when death occurs in consequence of a bodily injury from negligence, two causes of action may arise—one in favor of the decedent for his loss and suffering, resulting from the injury in his lifetime and revived, the other founded on damages resulting from his death.    It was shown that the case of *Legg Admr. vs. Britton*, 64 *Vt.* 656, overruled the Needham case, in holding that the act providing for the recovery of damages for death did not create a new and additional cause of action.

In the case of *Legg Admr. vs. Britton*, (*supra*), the intestate brought a suit to recover damages for injury by the unlawful act or negligence of the defendant, and pending the suit died, it was claimed, from the injury.    His administrator was substituted as party plaintiff and prosecuted the suit to final judgment which was satisfied.    The administrator subsequently brought this action to recover damages for the widow and next of kin for the death of the intestate as a result of said injury.    The defendant pleaded the former judgment and its satisfaction in bar of the action.    The plea was demurred to, and the demurrer was overruled.    The defendant excepted, and the case coming on to

be heard in the Supreme Court, the plaintiff contended that under the statutes two causes of action arose and relied upon *Needham vs. Grand Trunk Railway Co.* (*supra*). The defendant insisted that but one recovery against the party for the same negligent act could be had, and relied upon the unreported case of *Haliday et. al. Admrs. vs. Dover*, decided in that State in 1881. It was said that the precise question then before the Court was raised in the Haliday case, discussed and considered and in effect overruled some of the conclusions maintained in the Needham case. The Court considered the question before them, in the condition of the decided cases in the State, was fairly open for consideration and decision. Before the acts of 1847 and 1849, the right of action for personal injuries, resulting in death, did not survive. The act of 1847 caused to survive actions for the recovery of damages for injury occasioned by the act or default of the defendant, although one of the parties should die pending the action, as well as that such an action might be prosecuted by or against an executor or administrator. One section of the act of 1849, in legal effect, embodied the provision upon the construction of which determined the contention in the case. That provision was in the language of Lord Campbell's act. It was contended that the statute gave a new right of action. The Court said: "Strictly it is a new right of recovery arising from an injury to the intestate, which gave or would have given him a right of action and of recovery, if death had not ensued. The amount to be recovered is determined by the injuries sustained by the widow and next of kin, resulting from the death of the intestate, wrongfully occasioned by the defendant. The right of recovery and measure of damages are different from what existed in the intestate. This right of recovery did not exist at common law. It is wholly given by the act. It is not an act to cause to survive a right of recovery which otherwise would be taken away by the death of the injured. * * * Without the act the widow and next of kin could recover no damages for the destruction of the earning capacity of the intestate. The right of recovery is given and determined by the act. If we have interpreted the language of the act correctly, this right of recovery is conferred only when the

intestate would have had remaining a right of action if he had survived." The judgment entered upon the verdict of the jury below was reversed.

The case of *Labrano vs. Atlantic Mills*, 19 *R. I.* 129, was brought to recover for the pain and expense arising from injuries to the plaintiff's intestate before his death, which resulted therefrom. The defendant pleaded a judgment in its favor in a suit by the plaintiff in the same cause of action. The plaintiff replied that the former action was brought by him as trustee for the next of kin of the deceased, and in a different right. To the replication, the defendant demurred. The question was whether under the existing statues, an administrator had the right to maintain two actions for negligence resulting in death. It was urged that the action for personal injury upon which the deceased could have sued at common law, if death had not ensued, is given by a statute for survival for the benefit of his estate and that a new and independent remedy is given by another act for the loss sustained by the widow and children on account of the death. But on the other side, it was contended, that there is but one cause of action, and one remedy which is given to the family of the deceased, in lieu of the aid which they might have expected from the deceased, instead of recovery for the benefit of his estate; and that this remedy is exclusive. It was said by the Court in referring to Lord Campbell's act: "It was not an act for the benefit of the estate but for the families." Both American and English cases were reviewed and commented upon by the Court, and it was said that the case of *Read vs. Great Eastern R. R. Co.* (*supra*), "stated the principle upon which the compensatory act is founded. It creates no new cause of action by reason of the death, but gives a new right of recovery in substitution for the right of action which the deceased would have had, if he had survived."

The doctrine of these cases conforming to the construction of Lord Campbell's act by the English courts, to the effect that the act did not create a new cause of action, prevails most generally in other jurisdictions in this country, wherein similar

statues exist. There are decisions maintaining that the statutes under which it is held two actions may be brought do not cover the same ground, and that an action and recovery under one does not impair the right conferred by the other.

*Davis vs. Railway,* 53 *Ark.,* 117, so holds, and it cites in support of the double action doctrine *Blake vs. Railway,* 18 *Q. B.* 93; *Pym vs. Railway,* 2 *B. & S.* 759 (*supra*); *Needham vs. Railway,* (*supra*); *Littlewood vs. The Mayor etc.* (*supra*); which we have shown do not support the doctrine of a double action for the same grievance. *Commonwealth vs. Railway,* 107 *Mass.* 236, and other cases were also cited. The courts of Massachusetts and Kentucky regard their death provisions for the benefit of the relatives of the deceased as penal provisions rather than compensatory. In Illinois it is held that recovery under one action is exclusive of the other. It is further held that the survival act is applicable only in cases when death results from some other cause than the injury from negligence, and if death results from such injury; the personal action does not survive, and that the only right of action in such event is under the death provision for the benefit of relatives. *Holton vs. Daly,* 106 *Ill.,* 131; *Bruns et. al. vs. Welte Admx.* 126 *Ill. App.* 541; and *Chicago & E. I. R. Co. vs. O'Connor,* 119 *Ill.* 586.

Whether recoveries may be had under both the survival and death provisions of the statute for a single act of violence or negligence, the American decisions, as we have indicated, are in conflict. The decisive weight of authority is to the effect that the legislature never intended to allow two actions for the same injury.

Our conclusion is that by the death provision of our statute a new right of action has been created in favor of the person or persons named in the statute, but such right of action is dependent upon the right of the party injured, had he not died in consequence of his injuries, to maintain his action for personal injuries. For the language of *Section* 2 of our act is, " Whenever death shall be occasioned by unlawful violence or negligence, *and no suit be brought by the party injured to recover damages during*

*his or her life"* * * * the person or persons designated
therein "may maintain an action for and recover damages for the
death and loss thus occasioned." The words "and no suit be
brought," etc., which we italicised are qualifying words and a
limitation upon the right of the person or persons, designated in
the statute to maintain an action thereunder; and they negative
any idea that recoveries for damages may be had under both pro-
visions of the act for injuries resulting from a single act of un-
lawful violence or negligence.

The condition upon which the right to the statutory action
for damages for the death and loss depends is a concurrence of the
death of the party injured, in consequence of his injuries, and the
fact that no suit was brought by him therefor in his lifetime.

Passing now to the question of the effect of a release by the
party injured upon the statutory action, it may be said generally
that if the deceased had done anything which would bar an action
by him for personal injuries, the same will operate as a bar to the
statutory action. Counsel for the plaintiff in support of their
contention that the two provisions of our statute provide for two
separate and distinct actions for the same injury, and that the
statutory action at least is not affected by any contract or agree-
ment made by the deceased, particularly *before* an injury to him
should occur, relied especially upon the two cases next reviewed.

In the case of *Maney vs. C. B. & Q. R. R. Co.*, 49 *Ill. App.*
105, the Court said: "Neither argument nor authority would
seem to be necessary to sustain the view that the widow and next
of kin cannot be deprived of the property right (by the statute) so
created and vested in them at the will or pleasure or by the con-
tract of another, though he be the party charged with the perfor-
mance of duties out of which the right grew." It appeared from
the pleas relied upon in bar of the action that the defendant com-
pany had organized a "voluntary relief department," under and
by which a relief fund was accumulated to be applied to the relief
of its employees who might become sick or receive injuries, etc.,
or in payment of a death benefit in case of death, etc. The de-
ceased became and was a member at the time of his death. His

application for membership contained the following: "That in consideration of the amounts paid, and to be paid by said company, (the defendant) for the maintenance of the relief department; the acceptance of benefit from said relief fund, for injury or death, shall operate as a release and satisfaction of all claims for damages against the said company arising from such injury or death which could be made by me or my legal representatives." A certificate of membership was issued to the deceased, in his lifetime, obligating the defendant company to pay to Mary Maney, his wife, the amount of his death benefit and that after his death his said wife presented her claim for the death benefit under said certificate, and received the sum of $2500.00; being the amount provided for therein.   It was contended that the acceptance of the money by the widow operated as a bar to her action as administratrix for herself and children under the statute for their benefit.   It was not averred in any of the pleas that Mary Maney presented the claim as administratrix, in which capacity she had brought her action as required under the statute, or that the payment was made to her in her representative capacity.   The Court held it must be presumed that in presenting the said claim, she was acting as an individual in applying for and receiving the money.   It was said by the Court: "That if the contract made by the deceased provided for the payment of the sum named to all the persons who under the statute had right of recovery in the event of his death, the acceptance of such sum by such persons might have operated to bar further recovery upon familiar principles of estoppel.   But no such bar is created by a contract to pay one only of such persons, nor by the payment to one only.   The action is for the benefit of all entitled to recover under the statute, and is not based, or the right of recovery in anywise affected by  the payment to Mary Maney of the 'death' benefit under the contract entered into by the deceased."

The case of *I. C. R. R. Co. vs. Cozby*, 69 *Ill. App.* 256  was an action brought by the administrator of the deceased under the death act.   A contract of release entered into between the deceased and defendant company was relied upon in defense of

the action.    The Court said: "And the contract based upon these (defendant's) rules is broad enough in its terms to free appellant from liability for gross negligence, against which a common carrier is not permitted to contract under the decisions of the courts, but it is not necessary to rest the decision of this question upon the ground that such a contract is against public policy and therefore void.    It is sufficient to say, upon the authority of *Maney vs. C. B. & Q. R. R. Co.*, 49 *Ill. App.* 105, that the wife and child of the deceased had an interest in the continuation of his life which you could not take away from them by contract."

*Chicago B. & Q. R. Co. vs. Wymore*, 40 *Nebraska* 645 and *McKeeving vs. P. R. R. Co.* 65 *N. J. L.* 57 ,are also relief cases, similar to the Maney case.    Such cases neither present nor determine the effect of an absolute, valid release, made by the party injured upon the right of recovery of his relatives under the death statute, notwithstanding such a release by the party injured.

Respecting the relief cases, they simply hold that whenever the relief provision is made only for one person entitled to maintain an action under the statute, and not for all who may be entitled, that payment from the relief fund to and acceptance by such person will not deprive the other person or persons named in the statute from his or their benefit thereunder.

As opposed to the doctrine of the Cozby case, we will review some cases which had under consideration the effect of an absolute release executed by the party injured, *before his injury*, upon the right of action of the persons designated in the death statute.

The case of *Adams vs. Northern Pac. R. R. Co.*, 95 *Fed.* 938, which was also relied upon by counsel for the plaintiff, was brought by the widow and son of the deceased in the Circuit Court of the United States for the district of Washington, under the death act of Idaho.    Adams, the deceased, was riding on defendant's train on a free pass, containing, among other things, this provision: "The person accepting this free ticket agrees that the Northern Pacific Railway Company shall not be liable, under any circumstances, whether of negligence of agents or otherwise, for any injury to the person, or for any loss or damage to the property of the passenger using the same,—I accept the above conditions.

(signed) JAY H. ADAMS."

On the day before the body of Adams was found opposite a curve in the railroad track near Hope, Idaho, he with a friend started on one of defendant's trains to go to Spokane, Washington. Shortly after the train had started, he, then in the smoking car, went back to the dining car for cigars. After buying cigars he returned forward. This was the last seen of him alive. There was no direct testimony as to how he got off the train, whether by an accidental stumble, or by being thrown therefrom through the lurching of the train going at a rate of speed.

The plaintiffs had a verdict and judgment which were sustained by the Circuit Court of Appeals (54, *C. C. A.* 196; 116 *Fed. Rep.* 324) and the case was brought to the *U. S. Supreme Court* on a writ of *certiorari* (192 *U. S.* 445). It was urged on behalf of the plaintiffs that the release relied upon by the defendant company was void as against the plaintiffs because they were not parties to it, and that over their right of action, under the statute, for loss to them, the deceased could exercise no control; that the plaintiffs had an independent right of action for the losses to them occasioned by defendant's negligence, which the deceased could neither enjoy nor in anywise control, etc.

Mr. Justice Brewer in delivering the opinion of the Court said, among other things, "The question then is distinctly presented whether a railroad company is liable in damages to a person injured, through the negligence of its employees, who at the time is riding on a pass given as a gratuity, and upon the condition known to and accepted by him that it shall not be responsible for such injuries. It will be perceived that the question excludes injuries resulting from wilful or wanton acts, but applies only to cases of ordinary negligence. * * * This question has received the consideration of many courts and has been answered in different and opposing ways. We shall not attempt to review the cases in State courts. Among those which hold that the company is not responsible may be mentioned many cases" (then cited) * * * Referring to the case of *Baltimore Ohio &c. Railway vs. Voigt (supra)* the Justice said: "Voigt entering into the employ of the Express Company, signed a con-

. 24 Del.]  PERRY vs. P., B. AND W. R. R.  429

Opinion.

tract in writing, whereby he agreed to assume all the risk of acci-
dent or injury in the course of his employment, whether occasion-
de by negligence or otherwise, and expressly ratified the agree-
ment between the Express Company and the railway company.
It was held that he could not maintain an action against the rail-
way company for injuries resulting from the negligence of its
employees  *  *  *  .  In the light of this decision but one
answer can be made to the question.  The railway company was
not as to Adams a carrier for hire  *  *  *  .  He freely and
voluntarily chose to accept the privilege offered, and having
accepted that privilege cannot repudiate the conditions."  The
judgments in the Circuit Court and Court of Appeals, were re-
versed.

In the case of *Hodge vs. Rutland R. R. Co.*, 112 *App. Div.
Sup. Court, N. Y.* 142, the deceased shipped potatoes over
defendant's road, under a written contract by which, for a re-
duced freight rate and the carriage of the person accompanying
them without charge other than the sum paid for carriage of the
potatoes, he agreed that the company should not be liable for any
injury, by negligence or otherwise, to the potatoes or to the person
accompanying them.  The shipper acknowledged that he had
voluntarily accepted the reduced rate under the contract.  At-
tached to the contract was an agreement signed by the decedent
that was in charge of the potatoes, reciting "that in consideration,
*  *  *  *  ·*  he voluntarily assumed all risk of accident or
damage to his person and released and discharged the company
and every, and all claims, etc., for or on account of any personal
injury, etc., whether caused by the negligence of the company or
otherwise."  While the potatoes in the intestate's charge were in
transit; he was killed by reason of the alleged negligence of the
defendant, or its servants.  The administratrix of the intestate
recovered damages for his death.  The judgment was appealed
from.

Kellogg, J., said: "If Hodge (the deceased) had survived he
could not recover against the defendant for an injury caused by
the negligence of its servants.  The cause of action for causing

death by negligence is given by *Section* 1902 *of the Code of Civil Procedure*, and is given only against a person 'who, or a corporation which, would have been liable to an action in favor of the decedent by reason thereof, if death had not ensued.' "

The case of *Stroude vs. St. Louis Transit Co.*, 197 *Mo.* 616, was an action under the death provision. The intestate, father of the plaintiffs, was the driver of a wagon of an express company. The wagon was struck by a car of the defendant company, turned over and was badly broken, and the driver was thrown to the street and his back was hurt. He voluntarily, after full explanation that if he signed the release he could not recover for his injuries, joined with the express company in a release to the defendant company from all claims of both himself and the express company. The facts as fully stated by Valliant, J., in an able opinion filed in the case in *Division One*, 87 *S. W.* 976, were quoted in the latter case. The defendant company relied upon the said release in bar of the action subsequently brought to recover damages to his children for the death of the intestate. But it was urged on the other side that the statutes created two distinct causes of action in case of death.

Graves, J., said: "We then confront, in direct and unmistakable terms, the question as to whether or not, when a person is injured through the negligence or default of another, and before death, makes a settlement with the wrong-doer, can his widow or children yet maintain an action for the death and accrued damage, if any, by reason thereof. This question, we feel constrained, under the authorities and our statutes, to answer in the negative.

"Such answer is right in principle and in our judgment right under a fair and reasonable construction of the statutes. Our statutes never contemplated that there should be two such independent and distinct causes of action in cases of death resulting from a wrongful act, as would authorize a recovery by the injured party in his lifetime, and afterwards, another and further recovery by the widow and children in case of his death. Whether the right of action is a transmitted right or an original right, whether it be created by a survival statute, or by a statute creat-

ing an independent right, the general concensus of opinion seems to be that the gist and foundation of the right in all cases is the wrongful act and that for such wrongful act but one recovery should be had, and that if the deceased had received satisfaction in his lifetime, either by settlement and adjustment or by adjudication in the Courts, no further right of action existed."

After citing, reviewing and quoting from many authorities, the Court further said: "Under the holdings in this State, it matters not whether the cause of action is under the second or third section of the Damage Act, there must have been a right of action in the deceased, had he lived, before there exists a right of action in the widow or children   *   *   *   .  A settlement and adjustment or an adjudication in Court, by the deceased during as lifetime, is a bar to any action by the widow or children, and in this case the release in evidence is a complete bar to this action."   *   *   *.

The case of *Sewell vs. Atchinson, T. & S. F. Ry. Co.*, 96 *Pac. Rep.* 1007, was an action by the widow, whose husband was killed in a wreck on the road of the defendant company while engaged in the performance of his duties as an express messenger. Similar contract of release between the express company and the defendant company and between the deceased and the express company, relied upon in the present action as a defense, were relied upon in that case.   The Court reviewed many cases upon the question affecting the validity of said contracts, and having determined that the husband of the plaintiff had effectively waived any claim on his own part against the defendant company, proceeded to consider whether as a result of such waiver, the claim of his widow was defeated.

The Court said: "The plaintiff in error regards *Railway Co. vs. Martin*, 59 *Kan.* 437, as committing this Court to the proposition that the injured person cannot by his contract in any way affect the right of the beneficiary of the statute.   There the defendant had contracted that any liability for injuries he might receive through the negligence of another should not exceed $1,000. The limitation was held to have no effect upon the amount the

heirs might recover. * * * The only question there involved, however, was whether a valid limitation upon the amount the injured person could recover for himself imposed a like limitation upon the amount to be recovered in behalf of his heirs. * * * All that was said in the opinion was said with reference to that question, and no other was determined—certainly not the question here presented. * * * . Therefore a restriction upon the possible amount of his recovery can have no effect upon the extent of theirs" * * * : This is a consideration seemingly overlooked in *I. C. R. R. vs. Cozby*, 69 *Ill. App.* 256 (*supra*).

It was said that in *McCarthy vs. R. R. Co.*, 18 *Kan.* 46, "it was decided that the second action was, in a sense, a substitute for the first; that the first expired beyond survivor whenever the second occurred by the death of the plaintiff in consequence of the tort sued upon. This view is in accordance with the interpretation usually put upon similar statutes—that while the two causes of action are not the same, one depends upon the other, and any consideration that would be a bar to the first in the lifetime of the plaintiff would destroy the second. * * * The defense based upon such an agreement is essentially that the person injured assumed the risks of his employment, a defense which is recognized as available in actions under the statute referred to. *Rush Admx. vs. Mo. Pac. Ry. Co.*, 36 *Kan.* 129. Such assumption of risks, like contributory negligence, prevents a right of action accruing to him who receives the injury, and is, therefore, fatal as well to a recovery by his administrator." The judgment of the Court below was affirmed.

In the case of *The Western & Atlantic R. Co. vs. Strong*, 52 *Ga.* 461, the plaintiff below was the widow of the deceased. She secured a verdict. There was a writ of error. The original act giving the right of action put the right on the ground, "Whenever the husband, had he lived, would have had a right of action; then the wife has it in case of his death." *Act of* 1850, *Cobb's Dig.* 476. The deceased, in his lifetime, entered into an agreement with the defendant company wherein among other things, he stipulated that "In consideration that the said Western and

Atlantic Railroad Company will hire and pay him the wages stipulated, which is more than he can get elsewhere, will take upon himself all risk connected with, or incident to his position on the road; and will, in no case hold the company liable for any injury or damage he may sustain, while so employed," etc. This agreement was relied upon in bar of the action. It was said by the Supreme Court: "In the case of the *Western & Atlantic Railroad vs. Bishop*, 50 *Ga.* 465, we decided that the contract between an employee and the railroad, regulating the relative rights and duties of each, insofar as it did not condone any criminal act was binding on both parties." And under the view we have taken of the rights of the wife, that she must show a violation of some duty the company owed to her husband, we think she is bound by the relations they had established between themselves by contract not illegal; that the wrong she sued for must be a legal wrong, a wrong which the law recognizes as a breach of some of the duties the road owed to her husband; that she stands in his shoes; has his rights and takes his responsibilities  *  *  * . The judgment was reversed.

See also *Henricks vs. The Western & Atlantic R. Co.*, 52 *Ga.* 467.

Without pursuing our investigation further, we are of the opinion that the contracts relied upon in defense of this action are sufficient to bar a recovery for the reason, as we have already held, that the contract as between the plaintiff's husband and the express company was valid, and sufficient, he having knowledge of and assented to the contract between the defendant company and the express company, to have precluded him from a recovery for damages for personal injuries against the defendant company, had he survived his injuries, and the right of the widow to maintain this action is dependent upon the right of her husband to an action for the alleged injuries, if living. As he could not, if living, maintain an action by reason of his said contract, neither can she because an action by her for the same alleged negligent act is subject to the same defenses as an action by him therefor would be. Only one action may be maintained for the same

negligent act or injury. And the chief difference between an action brought by the party injured for damages for personal injuries and by the person designated in the statute for the death and loss in consequence of such injuries is in the measure of damages. This distinction was recognized in this State in the case of *Quinn vs. Johnson Forge Company*, 9 *Houst.* 338.

Just as a former recovery by the party injured through negligence, or a settlement for and release of damages made by him after such injuries, but before his death, will defeat an action for the death for the reason that the deceased himself, if living, could not thereafter maintain an action so an exemption from liability for personal injuries such as the law will permit, will deprive the persons designated in the statute from maintaining an action for the death.

After a careful consideration of all the questions presented at the argument, we are constrained to overrule the demurrer to the said fourth and fifth pleas.

The demurrer is overruled.

At the election of the plaintiff final judgment entered and exception noted for the plaintiff.