Filed May 26, 1891.

---

## No. 101.

## POSTLEWAITE *v.* POSTLEWAITE.

HUSBAND AND WIFE.—*Alienation of Husband's Affections.—Right of Action by Divorced Wife.*—A divorced woman in this State may maintain an action for the alienation of the affections of her former husband.

From the Jackson Circuit Court.

*B. H. Burrell,* for appellant.

*W. K. Marshall,* for appellee. •

REINHARD, J.—The appellant brought an action in the court below against the appellee for damages for alienating the affections of her husband, who is the appellee's son.

There was a demurrer to the complaint, upon the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled, and, upon issues joined, the cause was submitted to a jury for trial. The jury returned a verdict in favor of the plaintiff, who is the appel-

lant here, for $500, and the court rendered judgment thereon. This is an action to review the judgment and proceedings then had.

The complaint in the present case sets out at length the proceedings and complaint in the original action, and assigns as error the overruling of the demurrer to the complaint in that action.

In the present case a demurrer to the complaint was over-ruled, and this ruling is the error assigned and relied upon in this court.

There is much redundancy in the original complaint, and there are in it some statements inconsistent with and contra-dictory of each other, but we think, when taken as a whole, the complaint fairly makes a charge of alienating the affections of the appellant's husband and enticing him into leaving her.

It may be well enough to state here that the complaint we are about to consider discloses the fact that prior to the com-mencement of the original action the appellant obtained a decree of divorce from her husband, and was, therefore, at the time the action was commenced, in all respects, *sui juris.*

In the case of *Logan* v. *Logan,* 77 Ind. 558, it was held by a majority of the Supreme Court that a married woman could not maintain such an action. The grounds upon which the decision was based were very meagrely discussed, but seem to be these—that the wrong complained of was neither an injury to her person nor to her character, but that the statute only clothed her with the right to bring actions for injury to her person or character, and therefore did not in-vest her with the power to maintain this action.

So far as we are advised, this is the only case in which the subject has received any consideration at the hands of our Supreme Court. It must be seen at a glance that there is at least one essential difference between the case cited and the one we are now considering. In the case under consider-ation the plaintiff has been divorced from her husband, while in the case of *Logan* v. *Logan, supra,* she was still a married

woman, able to maintain only such actions as the statutes of the State specially enabled her to bring. The very foundation, then, of the ruling in that case has no existence whatever in the case at bar.

The question with which we are here concerned is not whether a married woman has the capacity to enforce a right of action given her by the law, but whether such a right has at all accrued to her; for if it has, she being now *sui juris*, no one will doubt her ability to maintain the action.

We think, therefore, that it may be truthfully said that the precise question we are called upon to decide has never been passed upon, and is, consequently, one of first impression in Indiana. Whether, by reason of more recent statutes, a woman who is still under coverture may now maintain such an action also, we need not and do not determine.

The theory of the common law was that the entire separate legal existence of the wife was merged in that of her husband who was the *dignior persona*. As Blackstone states it: "The inferior hath no kind of property in the company, care, or assistance of the superior, as the superior is held to have in those of the inferior; therefore the inferior can suffer no loss or injury." 3 Black. Com. 143.

It is true, that in the absence of domestic statutes to the contrary, the common law prevails in Indiana. Section 236, R. S. 1881. But so many innovations have been made upon the common law in relation to the status of married women in our State, that it can no longer be said to be in force as a rule, but only in exceptional cases.

It seems that our laws in relation to the rights and obligations of married women, as now existing, while based to some extent upon common law principles, have grown into a kind of special system, as it were, evolved, not only from the common law of England, but more largely, perhaps, out of the civil law of Rome.

It was under the common law that the legal fiction prevailed by reason of which the separate legal existence of the wife was regarded as swallowed up, so to speak, in that of the husband. By the marriage the latter became the owner of all her personal property, provided he reduced it to possession, and of the usufruct and rents and profits of her land, so long as they both lived. She could not bind herself by any sort of contract; could not carry on any trade or business, and all her earnings, the fruits of her labor and skill, belonged absolutely to her husband. She could, of course, make no conveyance of her separate real estate, except by his consent and by his joining with her in a deed. To this extent the common law idea of the legal unity of husband and wife still prevails in Indiana. *Johnson* v. *Jouchert*, 124 Ind. 105.

The civil law, on the other hand, rests upon an entirely different basis. By its provisions there was no such thing as a legal unity of the husband and wife in relation to their civil and property rights. Their marriage was more in the nature of a partnership, and hence there was no such thing as the merger of the inferior being into that of the superior. She never surrendered any portion of her separate property, whether personal or real, by virtue of the marriage, and she remained liable for her individual debts, during, as well as before, the existence of the marital relations. She was to all intents and purposes, a *femme sole*.

It has been the aim and tendency of our legislation to combine the better features of these two schemes, and, as a result, we have evolved the system which now obtains, not only in our own, but in many of our sister States.

A marked feature of this legislative tendency has been the constant disposition toward abrogating the common law unity of the husband and wife. Ever since the admittance of the State into the great sisterhood statutes have been framed, from time to time, clothing married women with new rights, and enabling them to enforce these rights.

Thus it has been provided, in derogation of the common law, that both the personal and real property of a wife shall remain hers, and shall not be subject to the husband's debts. And in actions concerning her separate property the right was given her to sue without joining her husband as co-plaintiff. Section 254, R. S. 1881. Indeed, there have been but few sessions of the General Assemby in which there was not made some provision enlarging the civil and property rights of married women, until now we have arrived at a point where the several common law disabilities have been, with very few exceptions, entirely abrogated. She is now bound by her covenants of title, and by an estoppel *in pais*, the same as if she were unmarried. She is liable for all torts committed by her, and her husband is no longer accountable for the same, except when they were committed by his direction, or in his presence, and with his knowledge and consent ; in which case he and the wife are jointly liable. She alone is responsible for her separate debts, contracted before or during the existence of the marriage relations. When a resident of the State, whether a householder or not, she is entitled to an exemption of $600 in property from sale on execution for the payment of any debt of her own. She has· the right to her own earnings, excepting only labor for her husband or family. She and her husband may testify for and against each other. She may sue him, in certain cases, for support and maintenance. She may also be elected, or appointed, to hold any school office in this State, and a bond executed by her, in furtherance thereof, is valid. All of this legislation, and much more that might be mentioned, is in derogation of the common law, and reveals a positive and unmistakable tendency in the direction of abrogating the old fiction of the merger of the wife's separate legal existence into that of the husband.

In the next place we observe that the common law itself, by reason of its flexible nature and capacity of adapting itself to all the changes and new phases of a progressive civ-

ilization, in many jurisdictions is now interpreted as fully recognizing this right of action in a married woman for the alienation of her husband's affections. Of course the enforcement of this right is still limited to cases where by statute she has been enabled to sue alone, as from the very nature of such cases it is seldom, if ever, practicable that the husband should join her in the action. In the following recent cases it has been held that a married woman may maintain an action of this character, if thus enabled to sue, and that the right of action exists as a common law right. *Breiman* v. *Paasch*, 7 Abb. N. C. 249; *Baker* v. *Baker*, 16 Abb. N. C. 293; *Jaynes* v. *Jaynes*, 39 Hun, 40; *Bennett* v. *Bennett*, 116 N. Y. 584; *Foot* v. *Card*, 58 Conn. 1; *Bassett* v. *Bassett*, 20 Ill. App. 543; *Warner* v. *Miller*, 17 Abb. N.C. 221; *Churchill* v. *Lewis*, 17 Abb. N. C. 226; *Simmons* v. *Simmons*, 21 Abb. N. C. 469.

In an English case in the House of Lords, Lord Chief Justice CAMPBELL takes decided ground in favor of the position that the right of action exists at common law, although the majority held to the opposite view. *Lynch* v. *Knight*, 9 H. L. 577. Indeed, the weight of authorities now goes to the extent of holding that a married woman has a right of action at common law for such injuries, though she may be in some jurisdictions without power of asserting such right; and that this very lack of power furnishes the reason why we have not had more decisions upon the subject.

The reasoning of the modern cases is that the husband always had the right to sue for the loss of his wife's *consortium*, and that no good reason can be shown why the same right did not inhere in the wife for the loss of the *consortium* of the husband; that in principle there is no distinction between the two cases; that the only obstacle in the way of her enforcement of this right was, as we have seen, the legal unity of herself and husband and the absence of enabling statutes, for if she had been permitted to maintain any sort of an ac-

Postlewaite *v.* Postlewaite.

tion at law it would have amounted to a recognition of her separate legal existence.

Certainly it would seem that if the common law itself is now so liberally interpreted in this regard, in jurisdictions where it still prevails, under a system such as ours, where its provisions in reference to the disabilities of married women have been almost entirely wiped out, the time had come when the courts of Indiana must recognize and accept principles so plainly and obviously in harmony with the spirit of the law-making power in this as well as in the majority of the jurisdictions of this country.

It must be admitted that there are some modern cases in which the right of action in question has been denied. See *Duffies* v. *Duffies* , 31 Cent. L. J. 29, and note by W. F. Elliott, where the cases are cited.

But we think the decided weight of authorities is in the opposite direction, and it seems to us that the reasons given on that side are much more convincing and the ruling is better adapted to the circumstances of our present society.

In addition to the cases already cited the following are referred to as supporting the view we have taken : *Seaver* v. *Adams* (New Hampshire), 19 Atl. Rep. 776 ; *Westlake* v. *Westlake*, 34 Ohio St. 621 ; *Mehrhoff* v. *Mehrhoff*, 26 Fed. Rep. 13.

In *Seaver* v. *Adams, supra,* the court says :

" As the only reason why the wife formerly could not maintain an action for the alienation of his husband's affections was the barbarous common law fiction that her legal existence became suspended during the marriage, and merged into his, which long since ceased to obtain in this jurisdiction, there remains now not the semblance of a reason, in principle, why such an action may not be maintained here ; and the weight of authority, also, is that the wife can maintain such an action when there is a statute enabling her to sue."

In the well considered case of *Foot* v. *Card, supra*, the Supreme Court of Connecticut uses this language :

" In a case of this kind the wife can only ask for damages by and for herself; the law can not make redress otherwise than to her solely, apart from all others, especially apart from her husband. For no theory of the law as to the merger of the rights of the wife in those of the husband could include her right to his conjugal affection and society. Although all other debts and rights to her might go to him, there yet remained this particular debt from him to her absolutely alone and beyond the reach of the law of merger. So long as she on her part kept the marriage contract no interest in this right can be taken from her; the husband can not acquire any interest in it; she can not transfer any. Of legal necessity, therefore, damages for injury to this right must be to her solely."

We will not make any other quotations from the decisions referred to nor pursue the inquiry further. We think, whether we view the question in the light of the common law or the recent legislation in our State, or both together, we must conclude that there is no longer any reason for withholding from the married women of this State a right so well recognized and supported by such strong reasons. At all events, there can be no shadow of an excuse for denying the right of action in a case where she has been divorced and has been invested with all the powers and capacities of a single woman to institute and maintain actions at law.

We think the ruling of the court, in the first instance, was right; that the complaint in the original case was sufficient, and the verdict and judgment thereon, if supported by proper and sufficient evidence, were valid, and that, consequently, the court should have sustained the demurrer to the complaint in the case at bar.

The judgment is, therefore, reversed, at the cost of appellee, and the cause remanded, with instructions to the court

below to sustain the demurrer, and for further proceedings in accordance with this decision.

Filed May 27, 1891.