# SUPREME COURT OF JUDICATURE

#### OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1891, IN THE SEVENTY-
SIXTH YEAR OF THE STATE.

---

### No. 15,400.

### HAYNES *v.* NOWLIN.

129 581
130 599
129 581
133 387
129 581
152 377

HUSBAND AND WIFE.—*Alienation of Husband's Affections.—Action by Wife.*
—A married woman may maintain an action against one who wrong-
fully entices her husband from her and alienates his affections.

From the Dearborn Circuit Court.

*W. S. Holman, W. S. Holman, Jr., H. D. McMullen* and
*W. R. Johnston,* for appellant.

*G. M. Roberts, C. W. Stapp, J. K. Thompson, M. J. Givan*
and *N. S. Givan,* for appellee.

ELLIOTT, C. J.—The question which the record presents
arises upon the ruling of the trial court sustaining a de-
murrer to the appellant's complaint. The question which
requires our consideration and judgment is this: Can a
married woman maintain an action against one who wrong-
fully entices her husband from her and alienates his affec-
tions?

It was the boast of the common law that "there is no

right without a remedy," and, in the main, this boast was not an idle one, but was made good by the vindication of legal rights in almost all instances where the right was appropriately presented for judicial consideration and determination. Some of the courts, however, sacrificed the principle outlined in the maxim to the demands of fancied consistency, and surrendered a clear and strong right to a barren technical rule, for they held that a wife could not maintain an action for the loss of the society, support and affections of her husband. The fiction that the *baron* and *feme* were one person so far swayed the judgments of some of the courts as to carry them from a sound fundamental principle, and cause them to declare a doctrine revolting to every right-thinking person's sense of justice, and contrary to the foundation principles of natural right. We say that some of the cases did this, for not all gave the doctrine we refer to support, but, on the contrary, denied it, by holding that the wife might have a right of action against the wrongdoer who took her husband from her. To these cases we shall presently refer. The principle outlined in the maxim quoted requires that, even where the common law as it now exists prevails, it should be held that a wife may have an action against the wrong-doer who deprives her of the society support and affections of her husband. If there is any such thing as legal truth and legal right, a wronged wife may have her action in such a case as this, for in all the long category of human rights there is no clearer right than that of the wife to her husband's support, society and affection. An invasion of that right is a flagrant wrong, and it would be a stinging and bitter reproach to the law if there were no remedy. The virtue of elasticity which has been so often ascribed to the common law, and generally very justly, is nowhere more clearly or beneficially manifested than it is in relation to the rights of married women. Long since the doctrine of feudal times, which gave so many, and such comprehensive rights, to the *baron* and so few, and such narrow

, ones, to the *feme*, has given way before the enlightened thought of better ages and less barbarous times. One who should now, either in England or America, attempt to secure an enforcement of the old rules which placed the wife in such abject subjection to the husband, and stripped her of so many rights which belong, in natural justice, to a rational human being, would find a stern denial. It is beyond controversy that without the aid of statutory enactments the harsh, unreasonable rules of the old common law have fallen before the spirit of enlightened reason and true progress.

The doctrine that the wife could not maintain an action against one who deprived her of her husband violates the old maxim that " Reason is the life of the law," for there can be no reason in a rule which gives the stronger a right of action for an injury and denies it to the weaker. If the strong may maintain an action, the greater the reason why the weak may do so. If the *baron* may recover from one who entices away the *feme*, surely the same reason that supports the rule giving the former a right of action must give a like right to the latter. The reason is the same, but the degree is not, for the reason intensifies in power when invoked by the injured wife. The decisions which denied the wronged wife a right of action broke the line of consistency and marred the symmetry of the law. We have spoken of the decisions under the common law, but we do not feel called upon to discuss them at length; that has been ably done by the courts which have given the subject consideration. *Bennett* v. *Bennett,* 116 N. Y. 584 ; *Lynch* v. *Knight,* 9 H. L. Cases, 577 ; *Breiman* v. *Paasch,* 7 Abb. N. C. 249 ; *Baker* v. *Baker,* 16 Abb. N. C. 293 ; *Jaynes* v. *Jaynes,* 39 Hun, 40 ; *Warner* v. *Miller,* 17 Abb. N. C. 221 ; *Churchill* v. *Lewis,* 17 Abb. N. C. 226 ; *Foot* v. *Card,* 58 Conn. 1.

The decisions to which we have referred, and the authorities they adduce, prove, beyond debate, that even at common law the right of action for a personal wrong was in the wife. We assume, therefore, that the right of action for a

wrong suffered by the wife was in her, and not in the husband. Any other conclusion is, indeed, logically inconceivable.

As the right of action for a personal injury was always in the wife, she is, of necessity, the real party in interest, and, upon reason and principle, she ought always to have been held to be the party entitled to prosecute the action for the invasion of that right. That it was not so held was owing to the power of the legal fiction that she and her husband were one, for from this fiction came the stiff, unreasonable rule, that in all actions she must join her husband. Equity, however, never gave full recognition to this technical doctrine. Our statute, years ago, gave the wife a right to sue alone, and thus—adopting the chancery doctrine and abrogating that of the common law—broke down the only position upon which it could, with the slightest plausibility, be asserted that she could not sue one who wrongfully took her husband from her, since upon the ground that she could not sue alone was rested the doctrine denying her a right to sue one who enticed away her husband. It was never asserted by the better considered cases, nor by the abler text-writers, that she did not herself possess the substantive right upon which the cause of action was founded. The reason that she could not maintain such an action was, not that she was not the source of the substantive right, but that there was no remedy available to her for the vindication of the right. When the statute supplied the remedy by breaking down the barrier which stood between her and a recovery, it clothed her with full right to enforce her just and meritorious cause of action. We know that in the case of *Logan* v. *Logan*, 77 Ind. 558, a different doctrine was declared, but that decision was by a divided court, and the question was not fully considered. Not a single authority was there adduced, nor is there any consistent line of reasoning. We should be strongly inclined to deny the soundness of that decision if it were necessary to do so, but it is not necessary that we should

overrule it, for, since the cause of action there declared invalid arose, radical changes have been made by statute. The rights, as well as the obligations of married women, have been greatly enlarged. In many cases it has been affirmed of married women that under the present statute "ability is the rule and disability the exception." *Rosa* v. *Prather*, 103 Ind. 191 ; *Arnold* v. *Engleman*, 103 Ind. 512 (514) ; *McLead* v. *Ætna L. Ins. Co.*, 107 Ind. 394 ; *City of Indianapolis* v. *Patterson*, 112 Ind. 344 ; *Bennett* v. *Mattingly*, 110 Ind. 197 ; *Strong* v. *Makeever*, 102 Ind. 578 ; *Lane* v. *Schlemmer*, 114 Ind. 296 (301); *Phelps* v. *Smith*, 116 Ind. 387 (402) ; *Young* v. *McFadden*, 125 Ind. 254 ; *Miller* v. *Shields*, 124 Ind. 166.

It seems to us very clear that, in view of the facts that true principle requires that a married woman should have a remedy for the vindication of a violated right, and that her rights and obligations have been so greatly increased and enlarged by the enabling statutes, she may have redress against one who wrongfully takes her husband from her.

Every radical and express change in the law carries with it corresponding and incidental changes. These incidental changes are inseparable from the essential express changes, and are wrought by the Legislature. No part of the law can be expressly changed without causing incidental changes. To hold otherwise would be to frustrate the legislative purpose and break the law into isolated parts and disjointed fragments. It must follow from this doctrine that, when the statutes gave a married woman the right to sue alone, and changed her *status* so as to invest her with the general property rights of a citizen and impose upon her almost the same obligations as those resting upon all citizens free from disability, they clothed her with the right to appeal to the courts to redress the wrong inflicted by one who tortiously wrested from her the support, society and affections of the husband.

In adjudging, as we do, that this action can be main-

tained, we believe that we build on solid principle, and we know that we are sustained by able courts. The authorities already adduced give our conclusion support and to them we add : *Seaver* v. *Adams* (N. H.), 17 Atl. R. 776 ; *Mehrhoff* v. *Mehrhoff*, 26 Fed. R. 13 ; *Westlake* v. *Westlake*, 34 Ohio St. 621 ; *Postlewaite* v. *Postlewaite*, 1 Ind. App. 473. See, also, *Duffies* v. *Duffies*, 31 Cent. L. J. 29. The views of the text-writers are in harmony with our conclusion. Mr. Bigelow says : " To entice away, or to corrupt the mind and affections of one's consort is a civil wrong for which the offender is liable to the injured husband or wife." Bigelow Torts, 153. Judge Cooley says : " We see no reason why such an action should not be supported where, by statute, the wife is allowed, for her own benefit, to sue for personal wrongs suffered by her." Cooley Torts, 228, *n.* Mr. Bishop clearly and strongly states the rule. He says : " Within the principles which constitute the law of seduction, one who wrongfully entices away a husband, whereby the wife is deprived of his society, and especially also of his protection and support, inflicts on her a wrong in its nature actionable. We have seen that by the common law rules, which forbid the wife to sue for a tort except by joining the husband as co-plaintiff, she is practically without an available remedy. But under the modern statutes as they are shaped in many of our States, she can hold property at law, bring suits to secure it, and maintain actions of tort, in her own name and with no interference from her husband. So that where a statute of this sort prevails, she has her action against the seducer of the husband, who has thus wrongfully deprived her of his society and care." 1 Bishop Marriage and Divorce, section 1358.

Judgment reversed.

Filed Dec. 8, 1891.