AND IN THE

## SUPERIOR COURT, COURT OF OYER AND TERMINER AND COURT OF GENERAL SESSIONS

OF

# DELAWARE,

BEGINNING SEPTEMBER, 1910.

---

HATTIE ELIASON *vs.* LILLIE C. DRAPER.

1. HUSBAND AND WIFE—ALIENATION OF AFFECTIONS—RIGHTS OF WIFE—REMEDIES.

Since at common law a married woman could not maintain an action in tort without joining her husband, and the husband was not permitted to join his wife in an action for a tort in which he participated or for which he was partly responsible, a wife, though injured by the alienation of the affections of her husband by another woman, had no remedy therefor. ,

2. HUSBAND AND WIFE—RIGHT TO CONSORTIUM OF HUSBAND.

The right to the consortium of the husband was recognized at common law as a right inherent in the wife, though not then enforceable in an action at law.

3. HUSBAND AND WIFE—ALIENATION OF AFFECTIONS—WIFE'S RIGHT TO SUE.

14 *Del. Laws, c.* 80, amended by 17 *Del. Laws, c.* 611 (*Rev. Code* 1852, amended to 1893, *p.* 600, *c.* 76), provides that a married woman, while living apart from her husband, may sue in her own name and for her own use for personal wrongs, torts, or private injuries. *Held,* that a married woman, living apart from her husband, and without joining him, was entitled under such act to sue another married woman, living apart from her husband, and without joining defendant's husband, for defendant's alienation of the affections of plaintiff's husband.

4. HUSBAND AND WIFE—ALIENATION OF AFFECTIONS—RIGHT TO SUE—"PROPERTY RIGHT."

Since a married woman's right to the affections of her husband is a "property right," and the loss thereof constitutes an injury to the consortium, a married woman, though living with her husband, may, without joining her husband, sue another married woman for alienating the affections of plaintiff's husband, under 14 *Del. Laws, c.* 550, providing that any married woman may prosecute and defend suits at law for the preservation and protection of her property as if unmarried.

(*September* 21, 1910.)

Judges CONRAD and WOOLLEY sitting.

*Philip Q. Churchman* and *Philip L. Garrett* for plaintiff.

*Rodney and Rodney* for defendant.

Superior Court in and for New Castle County.

ACTION ON THE CASE (No. 9, January Term, 1910), by Hattie Eliason against Lillie C. Draper for alienation of the affections of plaintiff's husband.   Both the plaintiff and the defendant were married women living apart from their husbands.   And the action was brought as above without the joinder of their husbands. The defendant demurred generally to the declaration.   The demurrer was over-ruled.

(Same case on motion for a bill of particulars before filing pleas, *post* 64.)

WOOLLEY, J., delivering the opinion of the court:

This is an action instituted by a married woman, living apart from her husband, against a married woman living apart from her husband, without the joinder of their respective husbands as parties, wherein the plaintiff seeks to recover damages from the defendant for enticing away her husband and alienating from her his affection, and thereby depriving her of his comfort, fellowship, aid and assistance.

In support of her remedy, the plaintiff counts upon a statute enacted in 1871, which provides,

"That money or other property held or acquired by a married woman, living separate from and not supported by her husband, * * *, shall not be deemed his property or taken for his debts so long as they shall live separate and he fail to support her in whole or in part; but such property may be taken for debts and liabilities contracted or incurred by such married woman whilst so living apart from her husband, and for the recovery thereof she may, whilst her separation continues, be sued as a single woman, and may sue in her own name and for her own use for debt contracted and liabilities incurred to her, (or for the redress of her personal wrongs, torts, or private injuries).   For her indebtedness and lia-

Opinion.

bilities, contracted or incurred whilst living separate from him without his default, he shall not be liable, otherwise he shall be responsible for them to the same extent that he is now responsible by law.   In case they again cohabit, he shall be responsible for all her debts and liabilities contracted or incurred during such separation." *Chapter* 80, *Vol.* 14, *Laws of Del. amended by Chapter* 611, *Vol.* 17, *Laws of Del.*, published in *Rev. Code, p.* 600.

The plaintiff further relies for her remedy upon a statute enacted in 1873, which provides,

"That any married woman may prosecute and defend suits at law or in equity for the preservation or protection of her property as if unmarried, * * *." (*Chapter* 550, *Vol.* 14, *Laws of Del.*).

To the declaration the defendant demurred generally, and contends that neither by the common law nor by the statutes of this State is a married woman afforded a remedy for the injury of which the plaintiff complains, nor is a married woman, when sued alone, required to respond in an action for such an injury.

It is urged in support of the demurrer, that at common law a married woman could not maintain an action in tort without the joinder of her husband, and that likewise at common law, a husband was not permitted to join his wife in an action upon a tort, as for the alienation of his affection, where he participated in the wrong and was in a measure responsible for the injury; and as for such a tort she could neither sue alone nor by the aid of her husband's joinder, she was therefore without remedy.   It is further urged that the married women acts of this State create no new right of action in a wife, that they simply authorize her to maintain alone only those actions which at common law she could maintain with her husband or which he alone could maintain for her (*Vincent vs. Ireland*, 2   *Penn.* 580, 582; *Wood v. Vernon*, 8 *Houst.* 48, 60, 12 *Atl.* 656), and that as at common law an action upon tort for the alienation of her husband's affection could not be maintained by her with her husband's joinder or by her husband alone, she is under the statutes as helpless as she was at common law to obtain a remedy that gives here redress for such an injury.

Recognizing that the statutes of this state enacted for the benefit of married women are remedial statutes, "to be construed so as

to suppress the mischief against which they are aimed, but not as altering the common law any further than is necessary to remove that mischief" (*Forbes v. Thompson*, 2 *Penn.*, 530, 533. 47 *Atl.* 1015; *Masten v. Herring*, 6 *Penn.*, 282, 66 *Atl.* 368), and remembering that the common-law unity for husband and wife, while modified, has not been abolished in Delaware, and that the wife is still under those common-law disabilities that have not been removed by statute (*Wright v. P. & W. Co.*, 1 *Marvel*, 325, 40 *Atl.* 1123; *Forbes v. Thompson*, 2 *Penn.*, 530, 47 *Atl.* 1015; *Vincent v. Ireland*, 2 *Penn.*, 580, 49 *Atl.* 172; *Masten v. Herring*, 6 *Penn.*, 282, 66 *Atl.* 368), it devolves upon the court to determine, for the purposes of this case, whether at common law a married woman had such a right to her husband's society, comfort and assistance, which, but for her disabilities of coverture, entitled her to a remedy for its infraction, and whether the statutes of this state so completely relieved her of her disabilities as to enable her to enforce her right by an action at law. The inquiry into the question submitted, therefore, must necessarily be made in the light of the fundamental rule of statutory construction, which requires us to search out the old law and its mischief in order to discover whether the remedial legislation we are considering was intended to apply to that law and was framed to suppress its mischief.

In its early stages the common law enveloped the identity of the wife and all of her possessions in the personalty of the husband. The husband and wife were considered as one person and the wife's legal existence was merged and suspended during union. She had no will, and without her husband's authority could do no act. The rights and duties which were hers at marriage became his while the union lasted. In her property and its income he acquired either a qualified or absolute interest which excluded her from its enjoyment and control. She was unable to bring an action at law for the redress of an injury sustained in respect to her person or property, either in contract or in tort, unless with her husband's assent and participation, and she could not be sued except when her husband was sued with her. With the aid and joinder of her husband, a remedy was afforded her generally for torts committed against her, yet it was denied her when the tort

Opinion.

consisted in the alienation of her husband's affection, upon the theory that in such a wrong the husband must have assisted or assented, and therefore he should not be allowed to profit by his own wrong by becoming a party with his wife in an action to the fruits of which, if successful, he would be entitled. As in an action upon a tort of this character her husband was not permitted to sue with her, and as in an action upon a tort of any character she was not permitted to sue without him, the common law placed a married woman with such an injury in a technical predicament that left her wholly without a remedy at law.

As a result of this failure of the common law to afford a married woman a remedy at law for the alienation of her husband's affection, there is much conflict of opinion and decision respecting the effect and extent of modern enactments for the benefit of married women. This conflict has arisen out of the different constructions placed by the courts upon differing provisions of remedial statutes enacted in various jurisdictions, in their endeavor to give to a married woman remedies coequal with her rights that at the same time were consistent with the theory of her status at common law, the mischief of which such statutes were designed to correct. While in some cases opposite conclusions have been reached and in others like conclusions for opposite reasons, the decisions may be grouped into four classes.

The cases in the first class decide that remedial statutes, such as ours, do nothing more than enable a wife to sue alone only in those cases in which she could sue before with her husband joined. They hold that the non-existence of a remedy indicates the absence of a right, and as in an action of this character the wife had no remedy at common law, there is none given her by the statutes.

The jurisdictions that hold to this rule are *Ontario* (*Lellis v. Lambert*, 24 *Ont. App. Rep.* 653), *Maine* (*Hobbs v. Hobbs*, 70 *Me.* 382; *Libby v. Berry*, 74 *Me.* 288, 43 *Am. Rep.* 589; *Doe v. Doe*, 82 *Me.* 503, 20 *Atl.* 83, 8 *L. R. A.* 833, 17 *Am. St. Rep.* 499), and *Wisconsin* (*Duffies v. Duffies*, 76 *Wis.* 374, 45 *N. W.* 522, 8 *L. R. A.* 420, 20 *Am. St. Rep.* 79; *Lonstorf v. Lonstorf*, 118 *Wis.* 159, 95 *N. W.* 961). New Jersey until recently adhered to this rule (*Hodge v. Wetzler*, 69 *N. J. Law*, 490, 55 *Atl.* 49), but since the argument in

this case the Court of Errors and Appeals of that state has reversed the judgment in the case of *Sims vs. Sims*, 77 *N. J. Law*, 251, 72 *Atl*. 424, cited in the demurrant's brief, by holding that a statute, though remedial, that empowers a married woman to sue in her own name without joining her husband for all torts committed against her, enables her to maintain an action in tort for the alienation of her husband's affection.   *Sims v. Sims (N. J.)* 76 *Atl*. 1063.

The cases in the second class hold that as the loss of service is not an ingredient of the action, and as the right of a husband and wife to the society of the other is reciprocal, a wife had at common law a right of action for the alienation of her husband's affection, though considered by some to have been held in abeyance, and that she may now maintain such an action in the absence of statute and independent of enabling or remedial enactments.   The cases that uphold this rule place the reasoning for it upon the broad plane of the equality of husband and wife before the law and hold that equality of rights insures equality of remedies.   *Foot v. Card*, 58 *Conn*. 1, 18 *Atl*. 1027, 6 *L. R. A*. 829, 18 *Am. St. Rep*. 258; *Noxon v. Remington*, 78 *Conn*. 296, 61 *Atl*. 963; *Haynes v. Nowlin*, 129 *Ind*. 581, 29 *N. E*. 389, 14 *L. R. A*. 787, 28 *Am. St. Rep*. 213; *Postlewaite v. Postlewaite*, 1 *Ind. App*. 473, 28 *N. E*. 99; *Smith v. Smith*, 98 *Tenn*. 101, 38 *S. W*. 439, 60 *Am. St. Rep*. 838; *Bassett v. Bassett*, 20 *Ill. App*. 543.

The cases in the third class hold that notwithstanding the anomalous position in which a married woman found herself at common law, in not being able to sue in an action of this character without her husband, for one reason, and not being able to sue with him for another reason, those remedial statutes which give to a married woman a right of action in her own name for the redress of her own personal wrongs, torts and njuries, are, by such terms, sufficiently comprehensive to include the right to sue when the tort consists in the alienation of her husband's affection.   *Sims v. Sims*, 76 *Atl*. 1063; *Wolf v. Frank*, 92 *Md*. 138, 48 *Atl*. 132, 52 *L. R. A*. 102; *Price v. Price*, 91 *Iowa*, 693, 60 *N. W*. 202, 29 *L. R. A*. 150, 51 *Am. St. Rep*. 360; *Nichols v. Nichols*, 147 *Mo*. 387, 48 *S. W*. 947; *Bennett v. Bennett*, 116 *N. Y*. 584, 23 *N. E*. 17, 6 *L. R. A*. 553; *Haynes v. Nowlin*, 129 *Ind*. 581, 29 *N. E*. 389, 14 *L. R. A*. 787, 28 *Am. St. Rep*. 213; *Seaver v. Adams*, 66 *N. H*. 142, 19 *Atl*. 776, 49

*Am. St. Rep.* 597; *Betser v. Betser*, 186 *Ill.* 537, 58 *N. E.* 249, 52 *L. R. A.* 630, 78 *Am. St. Rep.* 303; *Nolin v. Pearson*, 191 *Mass.* 283, 77 *N. E.* 890, 4 *L. R. A.* (*N. S.*) 643, 114 *Am. St. Rep.* 605; *Price v Price*, 91 *Iowa*, 693, 60 *N. W.* 202, 29 *L. R. A.* 150, 51 *Am. St. Rep.* 360; *Lockwood v. Lockwood*, 67 *Minn.* 476, 70 *N. W.* 784; *Cooley on Torts*, 227.

The cases in the fourth class recognize the right of a husband to the consortium of his wife as a property right, and reason that with respect to matters of conjugal society and affection the husband owes to the wife all that she owes to him; and upon the same principle the wife's right is a property right, which in its broad sense "includes things intangible and invisible and applies to whatever is exclusively one's own," for an injury to which she may sue by force of those statutes which empower a married woman to sue for the preservation and protection of her own property as if unmarried. *Noxon v. Remington*, 78 *Conn.* 296, 61 *Atl.* 963; *Nichols v. Nichols*, 147 *Mo.* 387, 48 *S. W.* 947; *Jaynes v. Jaynes*, 39 *Hun.* (*N. Y.*) 40; *Foot v. Card*, 58 *Conn.* 1, 18 *Atl.* 1027, 6 *L. R. A.* 829, 18 *Am. St. Rep.* 258; *Deitzman v. Mullin*, 108 *Ky.* 610, 57 *S. W.* 247; 50 *L. R. A.* 808, 94 *Am. St. Rep.* 390; *Warren v. Warren*, 89 *Mich.* 123, 50 *N. W.* 842, 14 *L. R. A.* 545; *Price v. Price*, 91 *Iowa* 693, 698, 60 *N. W.* 202, 29 *L. R. A.* 150, 51 *Am. St. Rep.* 360; *Westlake v. Westlake*, 34 *Ohio St.* 621, 32 *Am. Rep.* 397.

The confusion of opinion upon this subject evidently has been occasioned by confusing a married woman's rights with her remedies, and considering the removal of her disabilities of coverture designed by modern legislation from the standpoint of her former remedies rather than from the standpoint of her former rights. This question is solved if it be found that at common law the wife had a right to the thing for the enforcement of which the law disqualified her by coverture, and if it also be found that the statutes have relieved her of her disqualifications of coverture and left her with her right undisturbed.

It has never been disputed that at common law it was the right of the husband to have and hold the affection, society, aid and comfort of his wife, and it is admitted that the law also gave him a right of action against one who interfered with that right by entic-

ing away his wife and alienating from him her affection. (*Winsmore v. Greenbank, Willes*, 577.) The basis of such an action was, as it is now, the loss of consortium or the right of the husband to the conjugal society of his wife.

The right of the wife to the consortium of the husband was likewise recognized at common law as an existing right of the married woman, though a right of action for its invasion was denied her because of the common-law doctrine of identity of person and its consequent trammels of technical procedure. Nevertheless her right existed, and its existence was recognized and enforced by the ecclesiastical courts in a suit by her for the restitution of conjugal rights, where in defense nothing less than conduct which would be sufficient to entitle the respondent to a judicial separation was a bar to the relief sought. (3 *Blac. Com.* 94; *Orme v. Orme*, 2 *Addams Eccl. Rep.* 382; 1 *Bishop, M., D. & S.* §§ 69, 1357; *Burrows v. Burrows*, 2 *Swabey & T.* 303.) "This recognition by the common law of the fact that the loss of consortium was an injury to the wife, and that its enforcement was her right, and the corresponding failure, on the other hand, to provide her with a legal remedy for the tort, is properly definitive of her status at common law, and places this branch of legal learning on its proper footing. That the common-law courts failed to find a remedy is, under the decisions, rather a recognition of the right, than a denial of its existence. For it may be said that the history of the common-law procedure is largely the history of substantive rights, remediless at first for lack of a suitable writ or precedent in the *Registrum Brevium*, until the persistence of the demand for a remedy developed the action of trespass on the case as a general specific in *consimili casu*, under the provisions of the statute of *Westminster II.*" *Sims vs. Sims* (*N. J.*) 76 *Atl.* 1063.

The case of *Lynch v. Knight*, 9 *H. L.* 577, illustrates the endeavor of English judges to supply a remedy for this conceded right. The Chief Justice of the Irish Queen's Bench said: "Can it be that for an injury of this sort a wife can have no redress? It is possible to sustain the position." When the case was decided by the House of Lords upon another ground, Lord Campbell said: "Nor can I allow that the loss of consortium or conjugal society

can give a cause of action to the husband alone. I think it may be a loss which the law may recognize to the wife as well as to the husband,"

The pronounced weight of authority in this country supports the proposition that the right to the consortium of the husband was recognized at common law as a right inherent in the wife, though not then enforceable in an action at law because of the conflict in the rules of procedure and the policy of the times. (Cases *supra.*)

Being of the opinion that the common law gave to a married woman a legal right to the consortium of her husband, but withheld from her, because of her disabilities of coverture, a legal remedy by which she might enforce that right, it now becomes necessary to ascertain what were those disabilities and whether they have been removed by statute so as to make the right capable of enforcement by an action at law.

The statute upon which the plaintiff counted (*Chapter* 80, *Vol.* 14, *Laws Del.*) provides that a married woman, while living apart from her husband, "may sue in her own name and for her own use * * * for the redress of her personal wrongs, torts or private injuries." The later statute, under which the plaintiff also pleaded (*Chapter* 550, *Vol.* 14, *Laws Del.*), provides that "any married woman may prosecute and defend suits at law * * * for the preservation and protection of her property as if unmarried." These provisions are in harmony with the tendency of modern legislation to put the husband and wife upon exact equality with respect to the enforcement at law of their rights of person and property. The provisions which enable a married woman to sue *in her own name* and *for her own use* for the redress of her torts, and empower her to prosecute suits at law for the protection of her property *as if unmarried*, certainly annul her common-law servitude of marriage and emancipate her from her common-law disabilities of coverture to the extent and for the purposes designated in the statutes. What were the common-law disabilities of marriage which she encountered when she sought redress at law for the loss of her husband's consortium? They were, first, her disability to sue in *any* tort without her husband's joinder; and, second

her disability to have her husband join her in an action upon a tort of this particular character. She was thus under two disabilities. They were alike disabilities of coverture; that is, disabilities growing out of the marriage union and because of her relation to her husband, and under which, but for her coverture, she would not have labored. When the statute gave a married woman living separate from her husband the right to "sue in her own name," it clearly relieved her of that disability of coverture, which before prevented her suing except with her husband, and when it further enabled her to maintain such a suit "for her own use," it plainly relieved her of the other disability of coverture, by excluding the husband from his common-law interest in his wife's property and choses in action, and thereby enabled her to sue in an action for the alienation of his affection, where before, his interest in the suit was the very thing that prevented his joinder and defeated her right to a remedy.

Viewing the provision of this statute with that of the later statute, which enables "any married woman" to prosecute suits "as if unmarried," it is clear that the intent and effect of each statute are to make a married woman, in the positions respectively contemplated by the statutes, discovert with respect to those disabilities of coverture under which she had previously labored in enforcing her personal rights or in redressing her private wrongs, and that such discoverture extends to and includes as well the disability that withheld from her a remedy because of her husband, as the disability that withheld from her a remedy without her husband.

We are therefore of opinion that the statute of 1871, as amended, upon which the plaintiff in her declaration has expressly counted, and which empowers a woman, while living apart from her husband, to "sue in her own name and for her own use * * * for the redress of her personal wrongs, torts and private injuries," removes from a married woman, when she shows herself in the situation contemplated by the statute, both of the common-law impediments to a remedy in an action in tort of this character, and the right of the married woman to her husband's consortium is by that removal at once made capable of enforcement under the remedial provisions of this act.

As the plaintiff by her pleadings has placed herself within the situation of separation contemplated by the statute of 1871, to which we have given interpretation, further consideration of this subject would be quite unnecessary, were it not for an interpretation previously given by the court to the statute of 1873, which provides that "any married woman may prosecute and defend suits at law * * * for the preservation and protection of her property as if unmarried," whereunder the court held that a married woman, while living *with* her husband, may maintain alone an action in tort for her personal injuries, and were it not for our consequent desire that our recognition of her right to maintain such an action while living apart from her husband should not be interpreted as a restriction of her right to that situation, and that this decision should not be considered to have disturbed the former one, either in its reasoning or effect.

The case of *Hatton v. The Wilmington City Railway Company*, *3 Pennewill, 159, 50 Atl. 633*, was an action in tort for personal injuries, instituted by a married woman alone, while living with her husband. The defendant contended that, under the statutes of this state, an action in tort could be maintained by a married woman alone only when she was living apart from her husband. The plaintiff maintained that personal property were things in action as well as things in possession, and that a right of action was property (*Cooley on Const. Lim.* 362), for the preservation or protection of which any married woman might sue alone under authority of the act of 1873, without regard to her relation with her husband. The court made its decision in harmony with this latter contention. Considering the effect of that decision upon the character of tort which is the cause of action in this suit, it will be found that the cases enumerated in the fourth group, previously classified in this opinion, support this argument and decision, and hold generally that the right of a wife to the consortium of her husband is a property right, and that statutes giving a married woman the right to sue alone in respect to her property, give to her alone a right of action in tort for an injury to her property right of consortium. The effect of the decision in the Hatton case was to construe the act of 1873 as enlarging a married woman's right of action beyond

that contemplated in the more restricted act of 1871, and to recognize under the act of 1873 the right of any married woman, wheresoever living, to maintain alone an action in tort for the redress of her personal injuries, upon the ground of enforcing her right of property. It being thus determined under the latter act that she may maintain an action in tort for an injury done to one class of her property, we make no distinction between a tort for personal injuries and a tort for the alienation of her husband's affection, and likewise hold, as we would have held in the first instance, had not the pleadings compelled us to construe the act of 1871, that under the act of 1873 any married woman may maintain an action in tort for the redress of an injury to her property right in her husband's consortium.

With respect to the remaining ground of demurrer, that the husband is liable for the torts of his wife and that, as he is not joined with her as a party defendant, the plaintiff should not further maintain her action, we have only to say that the question of the husband's liability for his wife's torts is not raised by the pleadings, as in this action the plaintiff does not seek to make the husband liable. Irrespective of any question of the husband's liability for his wife's torts, the statute under which this action is brought makes the wife liable for her own torts, for which she may be sued alone.

The demurrer is therefore overruled.