BLANCH SOBOLEWSKI *vs.* WALTER C. GERMAN.

1. ARREST—ACTION FOR UNLIQUIDATED AND UNCERTAIN DAMAGES MAY BE COMMENCED BY CAPIAS WITHOUT AVERMENT OF ACTUAL DAMAGES SUFFERED.

   Action for unliquidated and uncertain damages may be commenced by a *capias* under *Rev. Code* 1915, § 4093, without averment of actual damages suffered, since in such cases such averment cannot be made.

2. ARREST—ORDER OF COURT OR OF JUDGE HELD NOT CONDITION PRECEDENT TO ISSUANCE OF CAPIAS IN ACTION EX DELICTO.

   Order of court or of judge *held* not condition precedent to issuance of writ of *capias ad respondendum* in action *ex delicto*; the English acts prescribing such rule not having been adopted in Delaware.

3. ARREST—WRIT OF CAPIAS AD RESPONDENDUM HELD NOT PROPER AS FOUNDATION OF STATUTORY ACTION FOR LOSS OCCASIONED BY DEATH OF ANOTHER.

Under *Rev. Code* 1915, § 4093, which authorizes issuance of writ of *capias ad respondendum* in action for injury to person accompanied by violence, issuance of writ *held* not proper in action under *Section* 4155 for loss occasioned by death of another; the injuries within *Section* 4093 referring to injuries to person of party plaintiff, and gist of action under *Section* 4155, being for loss occasioned by death of another.

4. DEATH—STATUTE DOES NOT AUTHORIZE SUIT BY WIDOW FOR LOSS OF HUSBAND'S CONSORTIUM.

A widow cannot bring an action under *Rev. Code* 1915, § 4155, for loss for consortium of husband whose death was caused by negligent injury, in view of foundation upon which widow's right to bring action under *Section* 4155 of death of husband is based.

5. HUSBAND AND WIFE—COMMON LAW DOES NOT AUTHORIZE ACTION BY WIDOW FOR LOSS OF HUSBAND'S CONSORTIUM DUE TO NEGLIGENT INJURY.

Common law does not authorize action by widow for loss of husband's consortium due to negligent injury.

6. ARREST—CONSIDERATION BY COURT, IN CAPIAS SUIT, OF AFFIDAVIT FILED WITH PRAECIPE, HELD PROPER TO DETERMINE WHETHER ACTION IS WITHIN EXCEPTION OF STATUTE AUTHORIZING WRIT.

In *capias* suit begun under *Rev. Code* 1915, § 4093, it is proper for court to consider the affidavit filed with the praecipe in order to determine whether cause of action comes within exception of *Section* 4093 so as to justify issuance of writ.

(*December* 5, 1924.)

RICE and RODNEY, J. J., sitting.

*William Prickett* for plaintiff.
*P. Warren Green* for defendant.

Superior Court for New Castle County, May Term, 1924.

CAPIAS CASE, No. 116, May Term, 1924.

In this case it appears from the affidavit of the plaintiff filed with the praecipe that one William Sobolewski, the deceased husband of the plaintiff, on November 18, 1923, was walking on the public road from Wilmington to New Castle; that at said time he was run into by an automobile operated by the defendant and injured and from these injuries died within a few days. The affidavit asserts the negligence of the defendant in detailed terms and alleges that the death of the plaintiff's intestate was oc-

casioned by the unlawful violence and negligence of the defendant and that no suit was brought by William Sobolewski during his lifetieme to recover damages for said injuries.

- The suit was instituted as a *capias ad respondendum* and bail in the sum of $10,000.00 was required by the plaintiff.

The defendant has moved to quash and set aside the entire proceedings in said case including the writ of *capias*. Four reasons are assigned for the motion, the numerical order being herein somewhat changed as follows:

1. That the plaintiff in said affidavit does not allege that she has been injured or damaged in an amount exceeding $50.00.

2. That the plaintiff in said affidavit does not allege that she has been damaged in any amount whatsoever.

3. That the writ of *capias ad respondendum* was issued without an order of any court, or judge, in an action in case for unliquidated or uncertain damages.

4. That the affidavit is improper because it does not allege that the cause of action was "an injury to the person or property accompanied by violence to the party plaintiff but an injury to the person of a third party."

RODNEY, J., delivering the opinion of the court:

The only material statutory provision regulating the commencement of actions by capias is *Section* 4093 of *Revised Code* of 1915. This act was originally passed March 3, 1875 (*volume* 15, *Laws of Delaware, p.* 304) and the material portions are:

"No writ of *capias ad respondendum* shall be issued against any citizen of this state, in any civil action, unless the plaintiff therein  *  *  *  shall have made a written affidavit, and filed the same in the office of the Prothonotary of the Superior Court of the County out of which the writ is to issue, stating that, to the best of his or their belief, the defendant has absconded, or is about to abscond from the place of his usual abode; or that the defendant is justly indebted to the plaintiff, in a sum exceeding fifty dollars, and that he verily believes the said defendant has secreted, conveyed away, assigned, settled or disposed of, either money, goods, chattels, stock, securities for money, or other personal estate or real estate of the value of more than one hundred dollars with intent to defraud his creditors, and shall, moreover, in such affidavit, specify and set forth the supposed fraudulent transactions.

"Provided that this section shall not apply where the action shall be for libel, slander or injury to the person or property, accompanied by violence, if any affidavit of the cause of action be filed with the praecipe."

[1]    The cause of action in this case, arising *ex delicto* where the damages are necessarily unliquidated and uncertain in amount, makes the consideration of the first two grounds of the defendant unnecessary.   There seems to be no question that, under proper circumstances, an action may be commenced by *capias* where the damages are unliquidated and uncertain, and in these cases no averment of an actual amount of damage can be given.

[2]    It is apparent, of course, that the cause of action in this case is embraced within the provision at the end of the statute above quoted as being "an injury to the person accompanied by violence," and that, under the terms of the statute itself, that act does not apply.   This being true, we are left with no statutory regulation at all with which to chart our way, with nothing but the common law as modified by our practice.   Under these circumstances a brief review of the astonishing and anomalous situation of the common law relative to writs of *capias ad respondendum* may not be improper or without interest.

At the earliest common law, when any person felt himself aggrieved, he sued out an original writ in chancery which concisely stated the substance of the cause.   This writ was served by summoning the defendant to do justice or appear and answer the accusation.   Before service of the writ the sheriff was compelled to take pledge or security from the aggrieved party or the plaintiff.   Upon the return of the summons an attachment was issued to compel obedience to the writ.   By it was attached whatever goods the defendant had.   By this attachment and by distresses called *distringas infinite* the defendant in case he did not appear was gradually deprived of his property until he obeyed the writ, and when his property had been entirely consumed the law considered him incapable of making satisfaction.

Where, however, the injury was committed *vi et armis*, a different practice prevailed.   In the then existing state of society an injury to the person or with force required more prompt and

speedy relief than breaches of contract. Process by *capias ad respondendum* was provided against the defendant if he omitted obedience to the summons or attachment.

Gradually the indigent and fraudulent wrongdoers took such advantage of the immunity of their persons that the process by *capias ad respondendum* was enlarged to matter of contract. By 52 *Henry* III the remedy was extended to the old action of account, by 25 *Ed.* III to debt and detinue, and by 19 *Henry* VII it was provided "that like process be had hereafter in actions upon the case in any of the courts as in actions of trespass or debt."

By the passage of this last act all distinction between peaceable actions and those accompanied by violence, all difference between *ex delicto actions and actions ex contractu* was wiped out. The original writ and attachment fell gradually into disuse, and the pledges required of the complainant became the fictitious John Doe and Richard Roe. After the passage of 19 *Henry* VII a defendant was liable in all cases whatsoever to be arrested in the first instance by *capias* without any previous intimation of the justice of the demand, the nature of the injury or the extent of the loss sustained by the complainant.

The evils of the system of an almost uncontrolled power of arrest in civil cases continued for many years. By 12 *George* I, *chapter* 29 (1726), amended by 5 *George* II, *chapter* 27 (1732), made perpetual by 21 *George* II, *chapter* 23 (1748), it was provided that no one could be arrested upon a *capias* unless the plaintiff made and filed an affidavit that the cause of action amounted to ten pounds or upwards. The amount of the claim was indorsed on the writ and for this amount bail could be taken and no more. These acts requiring that the demand be certain and specific, it necessarily followed after their passage that no arrest could be made in a civil action without a judge's order for a cause of action arising out of a forceable injury or in any *ex delicto* action where the damage must necessarily be uncertain and incapable of arithmetical computation. We, therefore, see the anomalous situation that the only cause of action which originally justified the issuance of a *capias* became by virtue of the statutes the only

Opinion.

cause of action upon which a *capias* could not be issued without the precedent order of a judge.

The English acts, just referred to, having been enacted after the settlement and colonization of this state, the question of their application to our jurisprudence becomes material. The Delaware Constitution of September 20, 1776, adopted upon our separation from England and organization into an independent state government, provides by *Article* 25:

"The common law of England, as well as so much of the statute law as has been heretofore adopted in practice in this state, shall remain in force, unless they shall be altered by a future law of the Legislature; such parts only excepted as are repugnant to the rights and privileges contained in this Constitution and the declaration of rights, * * * agreed to by this convention."

The object of this clause was to secure to the people in their transition from a colonial to an independent political state, a jurisprudence already complete and adequate immediately to define and to protect their rights of person and property without awaiting the slow growth of a new system to be thereafter matured by legislation and judicial decision. *Clawson v. Primrose*, 4 *Del.* Ch. 643, 652. It created no new common law nor re-created any old common law, but continued an existing common law with such statutes as had been adopted in practice. We know of no compilation of the English Statutes which are in force in Delaware, although the Legislature on January 31, 1824, requested Chancellor Ridgely and Judge Hall to prepare such list (*volume* 6, *Laws of Delaware*, 381), and the report of Judge Hall to the Legislature of 1829 indicates that it had been prepared (*House Journal* 1829, *p.* 53). Such a compilation was, however, made in Pennsylvania in 1808 by the Supreme Court of that state under the guidance of Chief Justice Tilghman and by direction of the Legislature and is found in 3 *Bin.* (*Pa.*) 595-626. This interesting and comprehensive list contains all the English statutes adopted in Pennsylvania, but does not include the statutes under consideration, and the similarity of the early practice in Delaware and Pennsylvania furnishes a reasonable inference that the statutes were never adopted in Delaware. No precedent has been found in-

dicating that an order of a judge has ever been considered as a condition precedent to the issuance of a *capias* in an action ex *delicto* in Delaware. On the contrary, while the point has not been directly passed upon in any reported case *Jewell v. Staats, 3 Harr.* 96, was an action of slander commenced by *capias*, and the original papers disclose that no order of a judge was obtained prior to the issuance of the writ, and, indeed, the Court Records show numerous instances of such practice. *Jewell v. Staats, supra,* indicates that the practice was for the writ to issue, the defendant testing the propriety thereof by a Rule to show Cause of Bail. Upon the filing of a sufficient affidavit the rule was discharged, of course, by the Court in term time or by a Judge in vacation. See, also, *Hartman v. May,* 2 *Penn.* 512, 47 *Atl.* 622.

[3] We now consider the last objection of the defendant. It is apparent that the action is brought by virtue of *Section* 4155 of *Revised Code* of 1915, which provides:

"No action brought to recover damages for injuries to the person by negligence or default, shall abate by reason of the death of the plaintiff; but the personal representatives of the deceased may be substituted as plaintiff and prosecute the suit to final judgment and satisfaction.

"Whenever death shall be occasioned by unlawful violence or negligence, and no suit be brought by the party injured to recover damages during his or her life, the widow or widower, of any such deceased person, or if there be no widow or widower, the personal representative, may maintain an action for and recover damages for the death and loss thus occasioned."

The cause of action of the present plaintiff was unknown to the common law and arises purely by virtue of the cited statute. The cause of action does not arise by virtue of injuries to the person of the plaintiff nor even by virtue of injuries to the person of the plaintiff's deceased husband. It arises solely by virtue of the words of the statute, to "recover damages for the death and loss thus occasioned."

*Section* 4093 of the *Revised Code* excepts causes of action arising from "injuries to the person accompanied by violence" from the restrictive terms of the statute and leaves such actions as at common law. We are of the opinion that the quoted words refer to injuries to the person of the party plaintiff in the suit

begun by *capias.* At common law a claim for damages for injuries to the person did not survive in case of the death of the injured party.    It is only by virtue of the first paragraph of *Section* 4155 that such suits continue and only in favor of the personal representatives.

If the injured person in his lifetime commenced a suit "for injuries to the person accompanied by violence," he could, at his election in a proper case, commence such suit by *capias.* Upon his death, subsequent to the institution of the suit, the particular suit does not abate, but his personal representatives may be substituted as parties plaintiff, and in such case the death of the original plaintiff is not considered either in aggravation of damages or in any other way. *Quinn v. Johnson Forge Co.*, 9 *Houst.* 338, 32 *Atl.* 858; where, however, no suit is brought by the injured person during his lifetime but is instituted after his death, such suit is not based upon the injuries to the person of the deceased but upon "the death and loss thus occasioned." The gist of the action is not the injury but the loss occasioned by the death.

The cases of Gibbs, *Adm'x, v. Larrabee,* 23 *Wis.* 495, and *Ryall v. Kennedy,* 41 *N. Y. Super. Ct.* 531, are both quite similar to the present case and both arrive at the same conclusion as herein reached.

[4]    It is also contended that the cited statute( *Section* 4093) applies to injuries to property accompanied by violence; that the right of a wife to the consortium of her husband is a property right for injuries to which she may have an action, and that, therefore, the present plaintiff may sue by *capias* for the loss of her husband's consortium.

There are two reasons which prevent the application of this reasoning to the case at bar.    Where death ensues as the result of violence our statute, § 4155 (of which Lord Campbells Act was the prototype) gives a new right of action.  The new right of action was created in favor of the person or persons named in the statute but is dependent upon the right of the party injured, in case he had not died from his injuries, to maintain his action for

personal injuries. *Perry v. P. B. & W. R. R.*, 1 *Boyce* 399 at 424, 77 *Atl.* 725. In other words, no widow or personal representatives can bring an action for death by virtue of *Section* 4155 unless the party injured could have brought an action for injuries in case he had not died. It being apparent that no action based on loss of consortium or damage to property could have been brought by the deceased, consequently, no such action can be maintained by the wife.

[5] Equally effective answer must be made to any conten-·tion of the plaintiff that the cause of action, the loss of consortium, was a property right of the wife for which an action would lie irrespective of *Section* 4155.

It is true that *Eliason v. Draper*, 2 *Boyce* 1 at 9, 77 *Atl.* 572, holds that the right to the consortium of a husband was recognized at common law as a right inherent in the wife which could not be enforced by her except under the provisions of the Married Women's Act. The cause of action there involved, as well as in *Lupton v. Underwood*, 3 *Boyce* 519, 85 *Atl.* 965, was an injury or direct attack on the marriage relation itself. The authorities are so uniform that no right of action existed at common law for loss of consortium of the husband due to a negligent injury that a mere citation of the authorities must be sufficient. *Kosciolek v. Portland Ry. Light & Power Co.*, 81 *Or.* 517, 160 *Pac.* 132; *Caravens v. L. & N. R. R. Co.*, 195 *Ky.* 257, 242 *S. W.* 628; *Emerson v. Taylor*, 133 *Md.* 192, 104 *Atl.* 538, 5 *A. L. R.* 1045; 13 *R. C. L. P.* 1443, *Note to* 19 *L. R. A.* (*N. S.*) 633; 24 *L. R. A.* (*N. S.*) 1024.

[6] It will be remembered that under *Section* 4093 the plaintiff must file an affidavit of the cause of action with the præcipe in order to come within the proviso of the statute. It is extremely probable that this affidavit corresponds to the affidavit of the plaintiff filed under the old practice in response to a Rule to show Cause of Bail. At all events it is evidently required in order that it might affirmatively appear that the cause of action comes within the exception to the statute prior to the issuance of the *Capias.* Under such circumstances it is proper that the affidavit

be considered by the Court in such applications as the present. Being of the opinion that a writ of *Capias ad Respondendum* is not proper as the foundation of the present case, the said writ and all proceedings thereunder are hereby quashed and set aside.